CAIGER v OAKLEY

Docket No. 285549. Submitted June 2, 2009, at Lansing. Decided August
    25, 2009, at 9:00 a.m.

    Donald A. Caiger brought an action in the St. Clair Circuit Court
against Jason A. Oakley, Port Huron Auto Glass, and Farmers
Insurance following an automobile accident involving a van owned
by Port Huron Auto Glass and driven by Oakley. The plaintiff
settled with Farmer Insurance. The plaintiff had hyperextended
his knee in the accident, had arthroscopic surgery on the knee, and
eventually had knee replacement surgery. The plaintiff sought
noneconomic damages from the remaining defendants for the knee
injury. The court, Daniel J. Kelly, J., granted summary disposition
for those defendants, ruling that assuming that the knee injury
was related to the automobile accident, the plaintiff had not shown
that he sustained a serious impairment of body function that
entitled him to noneconomic damages under the no-fault act. The
plaintiff appealed.

    The Court of Appeals *held*:

    1. Pursuant to MCL 500.3135 of the no-fault act, a person is
subject to tort liability for noneconomic loss caused by his or her
use of a motor vehicle only if the injured person has suffered death,
serious impairment of body function, or permanent serious disfig-
urement. MCL 500.3135(7) defines "serious impairment of body
function" as an "objectively manifested impairment of an impor-
tant body function that affects the person's general ability to lead
his or her normal life."

    2. The plaintiff, at a minimum, presented a question of fact
concerning whether his knee problems resulted from, or were
exacerbated by, the accident. The plaintiff introduced a letter from
his physician and a surgical note indicating that the accident more
likely than not caused the pain in the plaintiff's knee that resulted
in total knee arthroplasty.

    3. The trial court erred by ruling that the plaintiff had not
suffered a threshold injury. The plaintiff showed that he suffered
an impairment of an important body function and that the
impairment was objectively manifested. The plaintiff further dem-
onstrated that his general ability to conduct his normal life had

been affected. The plaintiff suffered pain, underwent major surgery, experienced difficulty walking after surgery, and continues to suffer residual pain. The plaintiff had to forgo both his occupation as a commercial painter and his woodworking hobby as a result of his knee injury.

Reversed and remanded for further proceedings.

*Kitch Drutchas Wagner Valitutti & Sherbrook* (by *Paul B. Addis*, *Albert B. Addis*, and *David K. Pontes*) for Donald A. Caiger.

*Fletcher Fealko Shoudy & Moeller, P.C.* (by *William L. Fealko*), for Jason A. Oakley and Port Huron Auto Glass.

Before: OWENS, P.J., and SERVITTO and GLEICHER, JJ.

OWENS, P.J. Plaintiff appeals as of right the trial court's grant of summary disposition for defendants Jason Oakley and Port Huron Auto Glass in this automobile negligence claim.[1] We reverse and remand. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

On May 10, 2005, plaintiff was in an automobile accident with Oakley, who was driving a van owned by his employer, Port Huron Auto Glass. Plaintiff went to the hospital. He reported soreness throughout his body. Thereafter, he began experiencing pain in his right knee. Plaintiff suffered from hyperextension of the knee, and stated that he "would fall backwards when [he] was walking." A magnetic resonance imaging (MRI) revealed a meniscal tear. Plaintiff underwent arthroscopic surgery on July 22, 2005. After the surgery, the pain diminished in intensity, but plaintiff's knee continued to hyperextend. This hyperextension, and the pain associated with it, led plaintiff's physician to perform knee replacement surgery on plaintiff on April 20, 2006.

---

[1] Defendant's claim against defendant Farmers Insurance was settled, and Farmers Insurance is not a party to this appeal.

Plaintiff filed suit, seeking first-party benefits from Farmers Insurance and noneconomic damages from defendants. Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff's knee problems were not related to the accident and that even if they were, they did not constitute a substantial impairment of body function. The trial court granted defendants' motion. The trial court held that, even were it to consider plaintiff's knee injuries to be accident-related, plaintiff had not shown that he suffered a threshold injury. The trial court found that plaintiff had essentially abandoned his painting career for financial reasons and that plaintiff could find other employment, even with the physician-imposed restrictions placed on him by independent medical examiners. The trial court also found that plaintiff led the same life he did before the accident, albeit with minor restrictions.

We review a trial court's decision on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2001).

Pursuant to MCL 500.3135, a person is subject to tort liability for noneconomic loss caused by his use of a motor vehicle only if the injured person has suffered death, serious impairment of a body function, or permanent serious disfigurement. A "serious impairment of body function" is "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(7).

Under *Kreiner v Fischer*, 471 Mich 109, 131-132; 683 NW2d 611 (2004), the reviewing court is to determine whether a factual dispute exists "concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination

whether the person has suffered a serious impairment of body function." If a factual dispute exists, a court may not decide the issue as a matter of law. If no material question of fact exists regarding the nature and extent of the plaintiff's injuries, the question is one of law. *Id.* at 132.

When a court decides the issue as a matter of law, it must then proceed to the second step in the analysis and determine whether "an 'important body function' of the plaintiff has been impaired." *Id.* When a court finds an objectively manifested impairment of an important body function, "it then must determine if the impairment affects the plaintiff's general ability to lead his or her normal life." *Id.* This process involves an examination of the plaintiff's life before and after the accident. The court should objectively determine whether any change in lifestyle "has actually affected the plaintiff's 'general ability' to conduct the course of his life." *Id.* at 133. "Merely 'any effect' on the plaintiff's life is insufficient because a de minim[i]s effect would not, as objectively viewed, affect the plaintiff's 'general ability' to lead his life." *Id.* The *Kreiner* Court provided a nonexclusive list of objective factors that may be used in making this determination. These factors include

> (a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery. [*Id.*]

In addition, "[s]pecific activities should be examined with an understanding that not all activities have the same significance in a person's overall life." *Id.* at 131. Thus, where limitations on sporting activities "might not rise to the level of a serious impairment of body function for some people, in a person who regularly

participates in sporting activities that require a full range of motion, these impairments may rise to the level of a serious impairment of a body function." *Williams v Medukas*, 266 Mich App 505, 509; 702 NW2d 667 (2005). However, "[a] negative effect on a particular aspect of an injured person's life is not sufficient in itself to meet the tort threshold, as long as the injured person is still generally able to lead his normal life." *Kreiner, supra* at 137.

Specifically in regard to residual impairments, the *Kreiner* Court noted, "Self-imposed restrictions, as opposed to physician-imposed restrictions, based on real or perceived pain do not establish this point." *Id.* at 133 n 17. However, this Court has held that "[t]he necessary corollary of this language is that physician-imposed restrictions, based on real or perceived pain, can establish the extent of a residual impairment." *McDanield v Hemker*, 268 Mich App 269, 282-283; 707 NW2d 211 (2005). A physician need not offer a medically identifiable or physiological basis for imposing restrictions based on pain; however, a recitation of a physiological basis provides support for the conclusion that the restrictions are physician-imposed, rather than self-imposed. *Id.* at 284. In addition, this Court has recognized the difference between self-imposed limitations because of pain and self-imposed limitations based on physical inability, which can support a finding that the plaintiff has suffered a threshold injury. *Id.*

We hold that the trial court erred by granting defendants' motion for summary disposition.

Defendants argue that plaintiff presented no evidence that his knee problems resulted from the accident, or were exacerbated by it. Plaintiff argues that at a minimum, he presented a question of fact concerning this issue. We agree with plaintiff. Plaintiff presented a

letter from his physician that stated in pertinent part that the car accident "more likely than not caused the pain in [plaintiff's] knee which resulted in total knee arthroplasty."[2] This is consistent with a statement concerning the source of the injury in another surgical note presented by plaintiff.

The trial court erred when it found that, even if plaintiff demonstrated that his knee injury was caused or exacerbated by the accident, plaintiff could not meet the test of establishing a threshold injury. Plaintiff showed that he suffered an impairment of an important body function and that this impairment was objectively manifested. Plaintiff has further demonstrated that his general ability to conduct the course of his life has been affected.

Plaintiff suffered pain for a year after the accident, was forced to undergo major reconstructive surgery, and had great difficulty walking for seven weeks following the surgery. He underwent physical therapy from the surgery until October of 2006. Thus, the "nature and extent of the impairment" and "the type and length of treatment required" factors involved in this case support plaintiff's position that he suffered a threshold injury. Plaintiff suffers continued, and presumably permanent, residual effects. Although plaintiff's level of pain has apparently diminished since the knee replacement surgery, he still reports discomfort that occurs five or six times each day.

The trial court correctly noted that plaintiff had ended his career as a commercial painter because of financial reasons; however, painting was still plaintiff's

---

[2] Defendants' assertion on appeal that this evidence was not properly submitted to the trial court is contradicted both by defendants' attorney's statements during the motion hearing regarding the receipt of this material and plaintiff's facsimile transmission records.

trade and he has now lost the option of returning to that trade in better economic times. One of plaintiff's physicians stated that plaintiff was employable in a career that involved "no repetitive bending or prolonged standing." This restriction would prevent plaintiff from returning to work as a painter. Furthermore, plaintiff formerly enjoyed woodworking, including restoring cabinetry, and had been offered a contract to restore the cabinets in a house, but could not do so because of the accident. He claimed that he could no longer participate in this activity because he could not walk up and down to varnish pieces of wood.

Plaintiff's injury caused him to have to make a decision between a lifetime of knee hyperextensions resulting in "sharp screaming pain" and having his knee joint replaced with synthetic parts. While the knee replacement has led to some improvement in his ability to function, plaintiff is still missing a portion of his body that he will never retrieve. Plaintiff must forever depend on an artificial joint for his mobility and continues to suffer from chronic pain in his knee that will prevent him from returning to work in his previous occupation and prevents him from enjoying his woodworking hobby.

Therefore, we conclude that, as required by MCL 500.3135, plaintiff has established an objectively manifested impairment of an important body function and has also established that the impairment affects his general ability to lead his normal life.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.