FISHER v BLANKENSHIP

Docket No. 285852. Submitted August 11, 2009, at Lansing. Decided
      October 22, 2009, at 9:05 a.m.

      Brian Fisher (Fisher) and Kim Fisher brought an action in the Macomb
      Circuit Court against Derrick Blankenship, Greg Nickel, and Leanna
      G. Nickel, seeking noneconomic tort damages for injuries that Fisher
      sustained when Blankenship collided with the Fishers' truck while
      driving the Nickels' car. Fisher lost a front tooth when his face struck
      the steering wheel, and, because the surrounding teeth were not in
      good condition, his dentist decided to extract his remaining top teeth
      and fit him with a partial upper denture. Fisher claimed that the
      denture was difficult to insert and remove, altered his appearance,
      and caused him to drool, among other hardships. Defendants moved
      for summary disposition on the ground that there was no genuine
      issue of material fact regarding whether Fisher's injury amounted to
      a serious impairment of body function and permanent serious disfig-
      urement under MCL 500.3135(1). The court, David F. Viviano, J.,
      denied the motion, ruling that there were material factual questions
      with regard to whether Fisher had suffered a permanent serious
      disfigurement and how the injury had affected Fisher's employment,
      family life, and household duties. Defendants appealed.

            The Court of Appeals *held*:

            1. The trial court erred to the extent that it denied defendants'
      motion for summary disposition on the ground that there were
      questions of fact regarding the nature and extent of Fisher's injuries.
      Although defendants repeatedly referred to Fisher's loss of a single
      tooth, their analysis addressed the changes in Fisher's life occasioned
      by the use of his dentures, thereby effectively admitting that the
      nature and extent of Fisher's injury included the loss of all the teeth
      necessary to accommodate his prosthesis. Accordingly, the nature and
      extent of Fisher's injury was undisputed.

            2. Fisher's loss of teeth and concomitant need for a dental
      prosthesis constitutes a serious impairment of body function as a
      matter of law because Fisher must forever depend on his dentures,
      which are painful and difficult for him to use, in order to participate
      in everyday life activities such as eating and speaking. The fact that
      Fisher would have eventually required dentures to correct his preex-

isting dental problems does not prevent the tooth loss at issue from meeting the tort threshold because the aggravation or triggering of a preexisting condition can constitute a compensable injury.

3. The plain meaning of "permanent serious disfigurement," a phrase that the Legislature did not define, is a long-lasting and significant change that mars or deforms the injured person's appearance. When determining whether a plaintiff has established a threshold disfigurement, courts must objectively examine the physical characteristics of the injury on a case-by-case basis and determine whether, in light of common knowledge and experience and considering the full spectrum of the injured person's life activities, the injury's physical characteristics significantly mar or deform the injured person's overall appearance. Given that the statutory provision at issue does not limit recovery to those disfigurements that are always visible, whether the disfigurement is serious must be determined with regard to the injury's physical characteristics under a totality of the circumstances, which necessarily includes those times when the disfigurement is fully exposed to view. Therefore, in making this determination, courts must consider the effect of the disfigurement on the injured person's appearance when the person is not using devices designed to conceal the disfigurement. In this case, it is clear that Fisher's loss of teeth mars or deforms his overall appearance, and that this disfigurement will last for the remainder of his life. The trial court should have denied defendants' motion for summary disposition on this basis.

Affirmed.

K. F. KELLY, J., dissenting, agreed that there was no factual dispute regarding the nature and extent of Fisher's injuries, but opined that the trial court erred by denying defendants' motion for summary disposition because, viewing the evidence in plaintiffs' favor, plaintiffs did not establish an injury that met the statutory threshold.

1. INSURANCE — NO-FAULT — WORDS AND PHRASES — PERMANENT SERIOUS DISFIGUREMENTS.

A "permanent serious disfigurement," for purposes of the statutory threshold for recovering noneconomic tort damages resulting from a motor vehicle accident, is a long-lasting and significant change that mars or deforms a person's appearance (MCL 500.3135[1]).

2. INSURANCE — NO-FAULT — PERMANENT SERIOUS DISFIGUREMENTS — DETERMINATIONS OF PERMANENT SERIOUS DISFIGUREMENT.

To establish whether a plaintiff has established a disfigurement that meets the tort threshold for recovering noneconomic damages,

courts must objectively examine the physical characteristics of the injury, without the use of devices designed to conceal the disfigurement at issue, on a case-by-case basis and determine whether, in light of common knowledge and experience and considering the full spectrum of the injured person's life activities, the injury's physical characteristics significantly mar or deform the injured person's overall appearance (MCL 500.3135[1]).

*Goodman Acker, PC* (by *Barry J. Goodman* and *Kevin Z. Komar*), for plaintiffs.

*Garan Lucow Miller, P.C.* (by *Caryn A. Gordon*), for defendants.

Before: M. J. KELLY, P.J., and K. F. KELLY and SHAPIRO, JJ.

M. J. KELLY, P.J. In this automobile negligence action, defendants Derrick Blankenship, Greg Nickel, and Leanna G. Nickel appeal by leave granted the trial court's order denying their motion for summary disposition. On appeal, we must determine whether the trial court erred when it refused to dismiss the suit of plaintiffs Brian Fisher (Fisher) and Kim Fisher on the ground that they failed to establish that Fisher's injury amounted to a serious impairment of body function or a permanent serious disfigurement. Because we conclude that Fisher's injury met both the serious impairment and permanent serious disfigurement thresholds, we affirm. We have decided this appeal without oral argument under MCR 7.214(E).

I. BACKGROUND

Plaintiffs sued defendants to recover damages for injuries that Fisher sustained in an automobile accident in February 2004. Fisher was stopped at a red light when Blankenship struck Fisher's truck from behind.

Greg and Leanna Nickel owned the car driven by Blankenship. The impact of the collision pushed Fisher's car into the car in front of him and caused him to strike his mouth and nose on the steering wheel.

Fisher sustained damage to one of his front teeth, which was "pushed all the way back." He also received an abrasion to the bridge of his nose, and reported left knee and right hand pain. Later that same day, Fisher went to the emergency room of a hospital. The hospital staff treated him for his abrasion and confirmed that he had sustained a dental injury. The staff released him with a prescription for Tylenol and recommended that he see a dentist about the tooth.

Michael Harris, D.D.S., informed plaintiff that he had fractured his tooth and would have to have it removed. Initially, Dr. Harris replaced the missing front tooth with a single implanted post and crown in March or April 2004. However, because of the existing condition of Fisher's surrounding teeth, this was only a temporary measure. Fisher, who was 41 years old at the time of the accident, admitted that he had "some dental issues" before the accident. He had lost teeth in the back of his mouth, and Dr. Harris had told him that he would eventually need dentures to replace his top front teeth. Indeed, Fisher acknowledged that, before the accident, he and Dr. Harris had discussed that he might need to have dentures of the same type that he now has when he turned 50 or 55 years of age. However, the accident and resulting loss of the front tooth apparently accelerated Fisher's need for dentures. Ultimately Dr. Harris decided that the best course of action was to extract all of Fisher's top front teeth—fourteen in total—and replace them with a partial upper denture, which attached to implanted posts. This procedure was performed in March 2007.

Fisher testified that no physicians or dentists had restricted his current activities. He missed a few days of work because of the dental work, but otherwise did not miss any work because of the accident. He was able to perform the usual household chores. There was no significant effect on his usual social life. Fisher was able to eat as much as he did before, but had trouble eating certain foods like corn on the cob. He testified that the dental work altered his appearance by making his top lip protrude a bit further, and he felt uncomfortable with his current appearance because of the denture. He also testified that it now felt awkward to kiss his wife. However, he admitted that his friends had told him that his new teeth looked better than his originals. Fisher also testified that he drools occasionally because of the denture, and that the denture has altered his speech.

Fisher stated that the process involved in removing and replacing the denture each day was frequently painful, frustrating, and upsetting. He stated that he has problems with a severe gag reflex and that the process could take between 45 minutes to one hour when having difficulty. As of the date of his deposition, he had not sought counseling to address these problems or his discomfort with his current appearance and he was not taking medication to deal with the discomfort.

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that Fisher's injury did not amount to a serious impairment of body function or a permanent serious disfigurement as required by MCL 500.3135(1). The trial court denied the motion, explaining that material questions of fact existed concerning how the injury had affected Fisher's employment, family life, and his household duties and whether he suffered a permanent serious disfigurement.

## II. SERIOUS IMPAIRMENT

Defendants argue that the trial court should have granted their motion for summary disposition on the ground that plaintiffs failed to show that Fisher suffered a threshold injury. We review de novo a trial court's decision on a motion for summary disposition. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2002).

Under MCL 500.3135(1), a person is subject to tort liability for noneconomic loss caused by his or her use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. A "serious impairment of body function" is "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(7).

### A. NATURE AND EXTENT OF THE INJURY

To establish whether an injury constitutes a serious impairment, the reviewing court is to first determine whether a factual dispute exists "concerning the nature and extent of the person's injuries; or if there is a factual dispute, that it is not material to the determination whether the person has suffered a serious impairment of body function." *Kreiner v Fischer*, 471 Mich 109, 131-132; 683 NW2d 611 (2004). If there is a material factual dispute, a court may not decide the issue as a matter of law. If no material question of fact exists regarding the nature and extent of the plaintiff's injuries, the question is one of law. *Id.* at 132.

In the present case, plaintiffs argue that there is a material factual dispute concerning the nature and extent of Fisher's injury. Specifically, plaintiffs rely on

defendants' statements in their brief on appeal wherein defendants assert that the only injury suffered by Fisher was the loss of a single tooth. In their brief on appeal, and specifically in their reply to plaintiffs' brief on appeal, defendants emphatically deny that there is any factual dispute concerning the nature and extent of Fisher's injury:

> Defendants do not dispute that Plaintiff [lost] his front tooth as a result of this motor vehicle accident. Moreover, Defendants do not dispute that three years after the accident, Plaintiff chose to have his remaining upper teeth removed and to use an upper dental implant for his top teeth. The dispute in this case is whether [Fisher's] injury impacted his overall ability to lead his normal life to satisfy the statutory threshold of a serious impairment of a body function; and whether he suffered a permanent serious disfigurement.

Given these assertions, defendants ask this Court to reject plaintiffs' attempts to establish a question of fact concerning the nature and extent of Fisher's injury. We agree that there is no material dispute concerning the nature and extent of Fisher's injury. However, we reach this conclusion on the basis of defendants' admission that the nature and extent of the injury includes Fisher's loss of teeth beyond the first, which necessitated the dentures.

On appeal, defendants repeatedly referred to Fisher's loss of a single tooth. However, defendants also repeatedly argued that there was no material factual dispute concerning the nature and extent of Fisher's injury, and they acknowledged that plaintiffs' position is that Fisher's loss of *teeth* and their replacement by a prosthetic device constituted a serious impairment of body function and serious disfigurement. Defendants also specifically rely on MCL 500.3135(2)(a) for the proposition that whether Fisher's lost teeth and need for a prosthe-

sis constitutes a serious impairment or serious disfig-
urement is to be determined as a matter of law. Notably,
defendants have argued not that there is a question of
fact concerning the nature and extent of the injury, but
that the dispute is not material because—even accept-
ing plaintiffs' position on the nature and extent of
Fisher's injury—that injury does not meet the thresh-
old. Indeed, defendants analyzed the issue by reference
to the changes in Fisher's life occasioned by the use of
his dentures. Therefore, taking these statements in
context and as a whole, we conclude that defendants
have—for purposes of this appeal—effectively admitted
that the nature and extent of Fisher's injury includes
the loss of all the teeth removed to facilitate Fisher's
use of his prosthesis.[1] For that reason, we conclude
there is no factual dispute concerning the nature and
extent of Fisher's injury.

### B. FISHER'S ABILITY TO LEAD HIS NORMAL LIFE

When a court determines the nature and extent of a
plaintiff's injuries as a matter of law, it must then
proceed to the second step in the analysis and deter-
mine whether "an 'important body function' of the
plaintiff has been impaired." *Kreiner*, 471 Mich at 132.
When a court finds an objectively manifested impair-
ment of an important body function, it then must
determine whether "the impairment affects the plain-

---

[1] Indeed, we note that defendants' statements might even amount to a
formal concession regarding the nature and extent of Fisher's injury such
that defendants could be precluded from asserting otherwise before a
jury. See *Radtke v Miller, Canfield, Paddock & Stone*, 453 Mich 413, 420;
551 NW2d 698 (1996) (noting that judicial admissions are " 'formal
concessions in the pleadings in the case or stipulations by a party or its
counsel that have the effect of withdrawing a fact from issue and
dispensing wholly with the need for proof of that fact' ") (citation
omitted).

tiff's general ability to lead his or her normal life." *Id.*
This process involves an examination of the plaintiff's
life before and after the accident to objectively deter-
mine whether any change in lifestyle "has actually
affected the plaintiff's 'general ability' to conduct the
course of his life." *Id.* at 132-133. "Merely '*any* effect' on
the plaintiff's life is insufficient because a de minim[is]
effect would not, as objectively viewed, affect the plain-
tiff's 'general ability' to lead his life." *Id.* at 133. The
*Kreiner* Court provided a non-exclusive list of objective
factors that may be used in making this determination.
These factors include: "(a) the nature and extent of the
impairment, (b) the type and length of treatment re-
quired, (c) the duration of the impairment, (d) the
extent of any residual impairment, and (e) the progno-
sis for eventual recovery." *Id.* In addition, "[s]pecific
activities should be examined with an understanding
that not all activities have the same significance in a
person's overall life." *Id.* at 131. Thus, where limita-
tions on sporting activities "might not rise to the level
of a serious impairment of body function for some
people, in a person who regularly participates in sport-
ing activities that require a full range of motion, these
impairments may rise to the level of a serious impair-
ment of a body function." *Williams v Medukas*, 266
Mich App 505, 509; 702 NW2d 667 (2005). However,
"[a] negative effect on a particular aspect of an injured
person's life is not sufficient in itself to meet the tort
threshold, as long as the injured person is still generally
able to lead his normal life." *Kreiner*, 471 Mich at 137.

With regard to residual impairments, the *Kreiner*
Court noted, "[s]elf-imposed restrictions, as opposed to
physician-imposed restrictions, based on real or per-
ceived pain do not establish this point." *Id.* at 133 n 17.
However, this Court has held that "[t]he necessary
corollary of this language is that physician-imposed

restrictions, based on real or perceived pain, can establish the extent of a residual impairment." *McDanield v Hemker*, 268 Mich App 269, 282-283; 707 NW2d 211 (2005). A physician need not offer a medically identifiable or physiological basis for imposing restrictions based on pain; however, a recitation of a physiological basis provides support for the conclusion that the restrictions are physician-imposed, rather than self-imposed. *Id.* at 284-285. In addition, this Court has recognized the difference between self-imposed limitations caused by pain, and self-imposed limitations based on physical inability, which can support a finding that the plaintiff has suffered a threshold injury. *Id.* at 283; *Williams*, 266 Mich App at 509.

As a preliminary matter, we disagree with defendants' implicit contention that, since Fisher eventually would have had to use dentures or some other device because of his existing condition, his loss of teeth could not constitute a threshold injury. Although there is evidence that Fisher already had dental problems, the aggravation or triggering of a preexisting condition can constitute a compensable injury. See *Wilkinson v Lee*, 463 Mich 388, 394-395; 617 NW2d 305 (2000). Thus, a jury could reasonably find that Fisher suffered a serious impairment based on the accelerated loss of teeth caused by the accident. Notwithstanding this, defendants also argue that Fisher can essentially lead his normal life with his prosthesis; and, for that reason, the loss of teeth does not amount to a serious impairment of body function.

In *Moore v Cregeur*, 266 Mich App 515, 516-517; 702 NW2d 648 (2005), this Court discussed serious impairment in the context of a plaintiff whose accident left her with retina damage that resulted in permanent loss of visual acuity, a deterioration in her vision to 20/60, and

a partial loss of peripheral vision. Responding to the defendants' argument that the plaintiff had not suffered a threshold injury because she could use artificial aids to allow her to perform her previous tasks, the *Moore* Court held:

> Defendants suggest that, because plaintiff can still pursue all these activities, albeit with the aid of devices such as magnifiers and special lighting, or with retraining, the injuries do not rise to the level of affecting plaintiff's general ability to lead her normal life. We reject this application of the *Kreiner* standard. Although "minor changes in how a person performs a specific activity may not change the fact that the person may still 'generally' be able to perform that activity," *Kreiner, supra* at 131, we do not believe that plaintiff's inability to perform the activities she performed before the accident without the aid of special devices and significant retraining constitutes a "minor change" in how plaintiff performs those activities. By this standard, plaintiff could have lost her right eye entirely and the loss still would not have affected her general ability to lead her normal life because she could learn to perform the same activities with just one eye. The fact that plaintiff has had to take special steps to pursue the activities she routinely pursued in the past is clear evidence that her vision loss has affected her general ability to lead her normal life. [*Id.* at 520-521.]

We find *Moore* applicable here. Fisher cannot eat without the "special device" of his denture implant. He also presented evidence of his pain and difficulty in using this device[2] as well as evidence that he drools occasionally because of the denture, and that the denture has altered his speech. Like the plaintiff's vision impairment in *Moore*, Fisher's tooth "loss will affect every aspect of [his] life to some degree and will affect certain specific activities . . . even more." *Id.* at 521. In

---

[2] We note that we have reviewed the video evidence in which Fisher demonstrated how he inserts his dentures.

addition, this Court recently held that a plaintiff who elected to have knee replacement surgery after his knee was injured in a car crash had established a serious impairment of body function; this was in part because he "is still missing a portion of his body that he will never retrieve" and now "must forever depend on an artificial joint for his mobility . . . ." *Caiger v Oakley*, 285 Mich App 389, 395; 775 NW2d 828 (2009). Although this case involves a set of prosthetic teeth rather than a prosthetic joint, the same analysis applies: Fisher must forever rely on a prosthetic device in order to participate in everyday life activities such as eating and speaking.[3]

Under the facts of this case, Fisher's loss of teeth and the concomitant need for a prosthesis constitutes a serious impairment of body function as a matter of law.

### III. PERMANENT SERIOUS DISFIGUREMENT

As we have already noted, there is no material factual dispute concerning the nature and extent of Fisher's injuries. For that reason, whether Fisher's injuries constitute a permanent serious disfigurement is a question of law for the court. MCL 500.3135(2)(a).[4]

In order to determine whether Fisher's injuries meet the disfigurement threshold, we must first determine what type of injury the Legislature contemplated when

---

[3] In addition, there is some evidence that Fisher's denture system might not be a permanent solution. Dr. Harris admitted that Fisher may or may not have to undergo more surgery or have more implants "since no one knows how long mini-implants last. So far they have been successful for five years." Thus, there is evidence that Fisher's residual impairment might worsen with time.

[4] For this reason, the trial court erred to the extent that it determined that summary disposition was inappropriate because there was a question of fact regarding whether Fisher's injuries amounted to a permanent serious disfigurement.

it set the threshold. The best indicator of the Legislature's intent is the language actually used in the statute. *Kreiner*, 471 Mich at 129. Although the Legislature has determined that persons injured in an auto accident should be able to recover noneconomic damages if the injured person has suffered a "permanent serious disfigurement," MCL 500.3135(1), the Legislature has not further defined this term. When a term has not been defined by the Legislature or acquired a peculiar meaning under the law, this Court gives the words their ordinary meaning. *Ford Motor Co v Woodhaven*, 475 Mich 425, 439; 716 NW2d 247 (2006), citing MCL 8.3a.

Under the plain language of MCL 500.3135(1), in order to meet the disfigurement threshold, a plaintiff must have a disfigurement that is both permanent and serious. To disfigure something is to "mar the appearance or beauty of," to "deform," or to "deface." *Random House Webster's College Dictionary* (1997). Hence, with regard to a person, a disfigurement is something that mars, deforms, or defaces the person's appearance. Further, the disfigurement is permanent if it will exist perpetually or is otherwise "long-lasting," and will be considered serious if it is "significant" or "not trifling." *Id.* Thus, a threshold disfigurement is a long-lasting and significant change that mars or deforms the injured person's appearance.

In assessing whether a particular change in appearance meets the disfigurement threshold, this Court has held that the determination depends on the physical characteristics of the injury rather than the effect of the injury on the plaintiff's ability to lead a normal life. *Kosack v Moore*, 144 Mich App 485, 491; 375 NW2d 742 (1985). Thus, the focus must be on the outward appearance of the injury, which necessarily entails a case-by-

case assessment. Likewise, whether the change in appearance is significant enough to be considered serious is an objective determination that must be made as a matter of common knowledge and experience. See *Nelson v Myers*, 146 Mich App 444, 446 n 2; 381 NW2d 407 (1985). Finally, whether an injury constitutes a serious disfigurement must be determined with regard to the injured person's appearance while engaged in a "full spectrum" of life activities rather than in an isolated "perusal" of the injured person's immediate appearance. See *Owens v Detroit*, 163 Mich App 134, 140-141; 413 NW2d 679 (1987).[5] Consequently, when determining whether a plaintiff has established a threshold disfigurement, courts must objectively examine the physical characteristics of the injury on a case-by-case basis and determine whether, in light of common knowledge and experience and considering the full spectrum of the injured person's life activities, the injury's physical characteristics significantly mar or deform the injured person's overall appearance.

In this case, it is clear that Fisher's loss of teeth mars or deforms his overall appearance. Thus, the loss of teeth is a disfigurement. It is also abundantly clear that the disfigurement will last for the remainder of his life. Consequently, Fisher has suffered a permanent disfigurement. The only question is whether the disfigurement is significant enough to be considered "serious" within the meaning of MCL 500.3135(1).

It seems beyond dispute that, in the absence of any corrective measures, the loss of fourteen teeth would

---

[5] We acknowledge that *Kosack*, *Nelson*, and *Owens* were all decided before the Legislature amended MCL 500.3135 in 1995. See 1995 PA 222. However, with 1995 PA 222, the Legislature did not effect a change in the definition of a permanent serious disfigurement, and we find the analyses employed in these cases with regard to assessing whether an injury constitutes a permanent serious disfigurement to be persuasive.

constitute a serious disfigurement. Nevertheless, defendants argue that Fisher's appearance has not been significantly altered by the loss of his teeth given his use of a prosthesis to correct his appearance. Specifically, defendants argue that, with his dentures in place, Fisher's overall appearance is actually better than it was before the accident. This argument presumes that a disfigurement must be assessed in light of the steps that the injured party has taken or could take to conceal the disfigurement from view during his or her daily routine. Under this logic, a person with severe burn scars on his or her back would not have a serious disfigurement because he or she could cover the scarring with clothing and forever eschew those life activities that would expose the scars to public view. However, the statute does not limit recovery for disfigurement to those disfigurements that are always visible, and we will not read such a limitation into the statute. See *Paschke v Retool Industries*, 445 Mich 502, 511; 519 NW2d 441 (1994) ("Where the statutory language is clear, the courts should neither add nor detract from its provisions."). As this Court has already recognized, a disfigurement may be more visible during some life activities and less visible during other life activities. See *Owens*, 163 Mich App at 140-141. Thus, whether the disfigurement is serious must be determined with regard to the injury's physical characteristics under a totality of the circumstances, which necessarily includes those times when the disfigurement is fully exposed to view. Moreover, we do not agree that a disfigurement's seriousness is in any way diminished because the only persons who will see it when fully exposed are the injured person or those persons who are intimately connected to the injured person; a serious disfigurement remains a serious disfigurement even when hidden from the general public. For these reasons,

we hold that courts must consider the effect of the disfigurement on the injured person's appearance without the use of devices designed to conceal the disfigurement, such as the dentures in this case.[6] We do not, however, hold that the need—or lack thereof—for a prosthetic device cannot be considered when determining the seriousness of the disfigurement. Indeed, the fact that an injured person requires, or does not require, the use of a prosthesis to mitigate the disfiguring effects of an injury will often be evidence of the seriousness of the disfigurement.[7]

Applying the above considerations to this case, we conclude that Fisher's ability to partially conceal his disfigurement through the use of dentures does not render his disfigurement less serious. Rather, we conclude that the need for such a prosthesis is evidence that the disfigurement itself is so serious that one cannot reasonably expect Fisher to appear in public without it. Further, even when he uses the dentures, his appearance is significantly altered: his upper lip protrudes, he drools, and his speech is altered. Therefore, taking into consideration the effect of Fisher's injury on his appearance with regard to the full spectrum of his life activities, we conclude that Fisher's injury amounts to a permanent serious disfigurement.

The trial court erred to the extent that it denied defendants' motion for summary disposition because it concluded that there were questions of fact regarding the nature and extent of Fisher's injuries. The nature

---

[6] We note that this case is not one in which the injured person was able to obtain a permanent cosmetic correction of the disfigurement. Under such cases, the permanent correction might very well mitigate the seriousness of the disfigurement to such a degree that it would no longer meet the threshold.

[7] An injured person's ability to readily conceal a disfigurement might also be relevant to a determination of damages.

and extent of Fisher's loss of teeth was not disputed, and the loss of teeth constituted both a serious impairment of body function and a permanent serious disfigurement as a matter of law. Hence, the trial court should have denied defendants' motion on that basis. However, this Court will affirm where the trial court came to the right result even if for the wrong reason. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 508-509; 741 NW2d 539 (2007).

Affirmed. As the prevailing parties, plaintiffs may tax costs under MCR 7.219(A).

SHAPIRO, J., concurred.

K. F. KELLY, J. (*dissenting.*) I dissent. I do not disagree with the majority that there is no factual dispute regarding the nature and extent of plaintiff's[1] injuries: He fractured one front tooth and it was replaced with an implant. And, over three years after the accident, this implant and additional front teeth were replaced with a partial denture.[2] I do, however, disagree with the majority's conclusion that plaintiff suffered a serious impairment of body function or a permanent serious disfigurement as contemplated under § 3135(1) of the no-fault act, MCL 500.3135(1). Contrary to the majority, I would hold that the trial court erred by denying defendants' motion for summary disposition because plaintiffs failed to show a threshold injury under

[1] Because Kim Fisher's claims are derivative in nature, "plaintiff" refers to Brian Fisher only.

[2] Fisher testified that he would have needed the dental work performed eventually, even absent the fracture to the front tooth resulting from the accident. Several of his back teeth had already been replaced.

§ 3135(1) of the act. Accordingly, I would remand for entry of judgment in defendants' favor.

## I. STANDARD OF REVIEW

Our review of a trial court's decision on a motion for summary disposition is de novo. *Amerisure Ins Co v Plumb*, 282 Mich App 417, 423; 766 NW2d 878 (2009). Summary disposition under MCR 2.116(C)(10) should be granted where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

## II. SERIOUS IMPAIRMENT

MCL 500.3135(1) states in relevant part: "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, *serious impairment of body function, or permanent serious disfigurement.*" (Emphasis added.) "Serious impairment of body function" is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(7). It follows that to determine whether a person has suffered a serious impairment of an important body function, courts must consider whether a plaintiff is generally able to lead the normal life he or she led before the accident. *Kreiner v Fischer*, 471 Mich 109, 132-133; 683 NW2d 611 (2004). This analysis is highly plaintiff-specific: for example, a plaintiff who can no longer throw a baseball may or may not be "seriously impaired" depending on whether the plaintiff was a professional baseball player or "an accountant who likes to play catch with his son every once in a while." *Id.* at 134 n 19. The overall course of the specific plaintiff's "entire

normal life" before and after the accident must be compared because "[m]erely *any* effect' on the plaintiff's life is insufficient because a de minim[is] effect would not, as objectively viewed, affect the plaintiff's 'general ability' to lead his life." *Id.* at 133 (emphasis in original). Accordingly,

> [i]n determining whether the course of the plaintiff's normal life has been affected, a court should engage in a multifaceted inquiry, comparing the plaintiff's life before and after the accident as well as the significance of any affected aspects on the course of the plaintiff's overall life. Once this is identified, the court must engage in an objective analysis regarding whether any difference between the plaintiff's pre- and post-accident lifestyle has actually affected the plaintiff's "general ability" to conduct the course of his life. [*Id.* at 132-133.]

Our Supreme Court has articulated a non-exhaustive list of objective factors to assist courts in evaluating whether a plaintiff's general ability to conduct his or her normal life has been affected. *Id.* at 133. Those factors include:

> (a) the nature and extent of the impairment, (b) the type and length of treatment required, (c) the duration of the impairment, (d) the extent of any residual impairment, and (e) the prognosis for eventual recovery. [*Id.*]

Turning to the facts of this case, it is my opinion that there is no genuine issue of material fact that plaintiff did not suffer a serious impairment of body function. Plaintiff *admitted* at his deposition that his injuries do not affect his ability to perform the normal tasks of daily life. No physicians or dentists have restricted his activities in any way. He remains employed as a machine operator at Textron Fasteners, the same job he held before the accident, and he conceded that the condition of his mouth did not affect his ability to

perform his job functions. He missed a couple days of work because of the dental work involved, but otherwise did not miss any work because of the accident. He takes no medication for pain. He continues to perform his usual household chores. He continues to engage in his favorite hobby: building home theatres. There is no effect on his usual social life. Plaintiff is able to eat as much as he did before the accident and his weight has remained constant. While plaintiff suffers some difficulty and discomfort in removing and replacing his new upper dentures,[3] the record is devoid of any indication that this affected his ability to conduct the course of his normal life.

Objectively viewed, and based on *plaintiff's own testimony*, there is no "difference between the plaintiff's pre- and post-accident lifestyle [that] has actually affected the plaintiff's 'general ability' to conduct the course of his life." *Id.* at 133.[4] On this record, the trial court clearly erred by denying defendants' motion for summary disposition.

### III. PERMANENT SERIOUS DISFIGUREMENT

The record also demonstrates no genuine issue of material fact that plaintiff did not suffer a permanent serious disfigurement. With regard to determining whether an injury is a "permanent serious disfigurement" under § 3135(1), the disfigurement must, at

---

[3] At the time of his deposition, plaintiff had only had the denture for four months.

[4] The majority's attempts to favorably compare the facts of the instant case to *Caiger v Oakley*, 285 Mich App 389; 775 NW2d 828 (2009), is unavailing. In *Caiger*, as a result of injuries, the plaintiff lost his employment, continued to suffer chronic pain, remained medically restricted from continuing his trade, and was permanently prevented from engaging in his hobby of woodworking. Comparatively, the effect of plaintiff's injuries in this case is minuscule.

least, be severe. *Minter v Grand Rapids*, 275 Mich App
220, 228; 739 NW2d 108 (2007), rev'd in part 480 Mich
1182 (2008). The seriousness of a disfigurement "de-
pends on its physical characteristics rather than its
effect on [a] plaintiff's ability to live a normal life."
*Nelson v Myers*, 146 Mich App 444, 446; 381 NW2d 407
(1985); *Minter, supra* at 228, 242-243. While the emo-
tional impact of a disfigurement on a plaintiff is rel-
evant, that subjective factor must be reviewed in an
objective manner to determine whether the disfigure-
ment is truly serious or severe. *Minter, supra* at 229;
*Nelson, supra* at 446. A plaintiff's embarrassment or
sensitivity about his or her appearance are subjective
reactions to a condition that must be objectively judged
by the trial court, and such reactions do not always
create a question of fact. *Nelson, supra* at 446. And
determining the seriousness[5] of a disfigurement is a
matter of common knowledge and experience for the
courts unless there is a question regarding the nature
and extent of the disfigurement. MCL 500.3135(2)(a);
*Kern v Blethen-Coluni*, 240 Mich App 333, 338; 612
NW2d 838 (2000); *Nelson, supra* at 444, 446.

Here, viewing the evidence in a light most favorable
to plaintiff, he has suffered at most a permanent
disfigurement:[6] he fractured one tooth and it was re-
moved and replaced with an implant. Eventually, plain-

---

[5] Although MCL 500.3135(2) does not define "serious," it is defined in
Black's Law Dictionary (5th ed) as "important; weighty; momentous;
grave; great . . . ."

[6] I have assumed for sake of argument that plaintiff's condition is
permanent. Black's Law Dictionary (5th ed) defines "permanent" as
"[c]ontinuing or enduring in the same state . . . without fundamental or
marked change, not subject to fluctuation . . . fixed . . . ." Here, plaintiff's
disfigurement—his missing teeth—was remedied with a denture so that
he no longer suffers from the disfigurement; in other words, the
condition was fixable. Moreover, this disfigurement, as caused by the
accident, was also not permanent in the sense that he would have had to

tiff also had to have the implant removed, along with
additional front teeth, and replaced with a denture four
to nine years earlier than he would have had to other-
wise. While plaintiff is dissatisfied with his appearance
when wearing his partial upper denture, an objective
review of the physical characteristics of the disfigure-
ment shows that plaintiff's condition is quite far from
serious. Simply put, his missing teeth, and a subsequent
use of a denture, do not rise to the level of a serious or
severe disfigurement. This is because the disfigurement
he has suffered has been fixed so that the impairment is
no longer a deformity. In fact, photographs of plaintiff
wearing his denture depict a normal-looking man with
straighter-than-average front teeth.

Plaintiff complains of his appearance when wearing
the denture. But even when objectively considering his
subjective reaction, plaintiff's disfigurement cannot be
considered serious. As noted, pictures of plaintiff depict
a normal-looking man. Further, plaintiff conceded at his
deposition that his denture looks better than his old
teeth, and his friends have told him that his new teeth
looked better than his originals. Thus, even by his own
testimony, plaintiff does not suffer from a disfigurement
severe enough to be considered "serious" within the
meaning of § 3135(1). Defendants' motion for summary
judgment should have been granted on this basis as
well.

#### IV. CONCLUSION

The trial court erred in denying defendants summary
disposition, and the majority now compounds that er-
ror. Particularly with respect to the issue of serious

---

have the denture by the time he was 50 to 55 years old to remedy
pre-existing conditions. Thus, the disfigurement as caused by the acci-
dent only lasted four to nine years.

impairment, the majority is clearly not happy with the requirements of *Kreiner*. However, until modified or changed by either the Legislature or our Supreme Court, it remains the law and this Court is required to apply it in an intellectually honest manner. I would reverse and remand for entry of judgment in defendants' favor.