*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HELEN FAYE LINGENFELTER,

      Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE COMPANY,

      Defendant,

and

BETTY KRIEGER,

      Defendant-Appellee.

UNPUBLISHED
May 23, 2019

No. 343292
Monroe Circuit Court
LC No. 17-139619-NI

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition to defendant, Betty Krieger, in this third-party automobile negligence matter.[1]  We affirm.

## I.  BACKGROUND FACTS & PROCEDURAL HISTORY

On May 6, 2016, plaintiff, a 75-year-old retiree, was involved in a motor vehicle accident.  She was seated in the front passenger seat of a car driven by her fiancé, Yule Williams, when defendant ran a red light at an intersection, and hit Williams's vehicle on the front passenger side.  An ambulance transported plaintiff to the hospital but she was discharged after half an hour because her CT scans and x-rays indicated no fractures or bleeds.

---

[1] Plaintiff's claims against Farm Bureau General Insurance Company were dismissed by stipulated order.

Plaintiff claims that she suffered injuries as a result of this accident that constitute a serious impairment of a body function. She has an extensive medical history of chronic and degenerative problems dating back years before the May 2016 motor vehicle accident, which will be discussed more fully herein.

## II. STANDARD OF REVIEW

Defendant moved for summary disposition pursuant to MCR 2.116(C)(10). This Court reviews a trial court's decision on a motion for summary disposition de novo. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018).

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The moving party must specify issues for which there is no genuine issue of material fact and support the motion. MCR 2.116(G)(4). Then, the nonmoving party has the burden to provide evidence of a genuine issue of material fact. MCR 2.116(G)(4). The trial court reviews the record in the light most favorable to the nonmoving party considering affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. *Maiden*, 461 Mich at 120. Summary disposition is proper where there is no genuine issue regarding any material fact. *Id.* A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. *Zaher v Miotke*, 300 Mich App 132, 139–140; 832 NW2d 266 (2013).[2]

## III. APPLICABLE LAW

Under Michigan's no-fault act, MCL 500.3101 *et seq.*, an injured person may recover noneconomic damages if she can show that she has suffered a "serious impairment of a body function." MCL 500.3135(1). The issue of serious impairment is a question of law for the court in either of two circumstances. First, if "there is no factual dispute concerning the nature and

---

[2] In her brief on appeal plaintiff relies in part on an outdated and overruled summary disposition (actually summary judgment under the 1963 court rules) standard, arguing that under MCR 2.116(C)(10) the trial court can only grant a motion if it is "impossible" for the nonmoving party to support its claim at trial or because a record "might be developed" that could cause reasonable minds to differ. Yet it has been almost twenty years since the Supreme Court (1) explicitly recognized that that standard was inapplicable under the Michigan Court Rules established in 1985, and (2) reversed the cases citing to that standard. See *Smith v Globe Life Ins Co.*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999). We recognized this point more than a decade ago in *Grand Trunk WR, Inc v Auto Warehousing Co.*, 262 Mich App 345, 350; 686 NW2d 756 (2004), yet still today we frequently receive briefs that contain this outdated, overruled, and obviously inapplicable standard. Appellate counsel need either to update their brief banks or their legal research methods to avoid citing to these summary judgment standards that were long ago set aside by the 1985 Court Rules that established a more intricate and different summary disposition standard.

extent of the person's injuries." MCL 500.3135(2)(a)(i). Second, if such a factual dispute "is not material to the determination whether the person has suffered a serious impairment of body function." MCL 500.3135(2)(a)(ii). The statutory language of MCL 500.3135 provides three prongs necessary to establish a "serious impairment of body function": "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). Only the first and third prongs of this test are at issue in this matter.[3]

An impairment is "objectively manifested" when it is "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id*. at 196. Meaning, it is "observable or perceivable from actual symptoms or conditions." *Id*. Subjective complaints of pain and suffering are insufficient to establish an impairment, but evidence of a physical basis for the pain and suffering can be introduced to establish that the impairment is objectively manifested. *Patrick*, 322 Mich App at 607. "Medical testimony is generally, but not always, required to make this showing." *Id*. The "aggravation or triggering of a preexisting condition can constitute a compensable injury." *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009).

To determine whether a person's general ability to lead his or her normal life has been affected, "a comparison of the plaintiff's life before and after the incident" is required. *McCormick*, 487 Mich at 202. The impairment must have "an influence on some of the person's capacity to live in his or her normal manner of living." *Id*. "The court should objectively determine whether any change in lifestyle has actually affected the plaintiff's general ability to conduct the course of his life." *Caiger v Oakley*, 285 Mich App 389, 392; 775 NW2d 828 (2009) (citations and internal quotation marks omitted). However, "[m]erely any effect on the plaintiff's life is insufficient because a de minim[i]s effect would not, as objectively viewed, affect the plaintiff's general ability to lead his life." *Id.* at 392 (citations and internal quotation marks omitted). Self-imposed restrictions based on real or perceived pain do not establish the extent of any residual impairment. *McDanield v Hemker*, 268 Mich App 269, 282; 707 NW2d 211 (2005).

IV. ANALYSIS

In granting defendant summary disposition, the trial court determined that there was no objectively manifested impairment of an important body function. We agree.

When plaintiff went to the hospital immediately following the accident, her CT scans and x-rays were negative for any fractures or bleeds. She was told that nothing was wrong with her, and was discharged home after half an hour. She let a month pass before meeting with her primary care physician, Dr. Rodney Gilreath, who indicated that plaintiff's right back pain was

_____

[3] Defendant does not specifically dispute that the head, neck, back, and shoulder constitute "important" body functions having "great value, significance, or consequence." See *McCormick*, 487 Mich at 199. She merely argues on appeal that plaintiff cannot meet the three prongs.

chronic, and she had it for years. Dr. Gilreath did not diagnose plaintiff with any new conditions, but referred her to physical therapy.

Plaintiff's physical therapist noted that plaintiff's symptoms were consistent with lumbar radiculopathy and appeared to be neurologic in nature. Plaintiff's MRI in August 2016 indicated degenerative changes of her lumbar spine, and postsurgical changes compatible with her decompressive laminectomy surgery in 2007 to resolve issues connected with her 2001 cervical fusion. Degenerative changes were noted in her right knee in October 2016, for which she was given a steroid injection. She had more steroid injections in her back and right shoulder thereafter. It was not until April 2017—almost a year after the accident—that she was diagnosed with a full-thickness tear of her right bicep, and osteoarthritis, but no rotator cuff tear. In February 2018, she was still being treated for headaches, and chronic pain in her neck, shoulder, and back.

Plaintiff contends that due to the accident, she now suffers from a retracted long head tear of the biceps tendon in her right shoulder, multiple disc bulges and protrusions with areas of nerve root impingement in her spine, a compression fracture in her spine, bruising, and tendinosis or tendinitis in her right shoulder. However, plaintiff's post-accident complaints of pain and suffering mirror her preaccident complaints. She complained of back pain as early as the year 2000. She had headaches, and pain in her head that went down her neck into her shoulder in 2001. She had neck fusion surgery in 2001, but still complained of neck problems the following year. She was diagnosed with degenerative disc disease in her back in 2005, and had laminectomy surgery in 2007. A 2008 MRI of her spine indicated postoperative and degenerative changes. She had arthritis and degenerative changes in her left knee, and right ankle, which caused mobility problems *before* the accident. She continued to complain of chronic back pain in 2013, and had a total left knee replacement in 2015.

Four independent medical evaluations by physicians in separate fields and specialties concluded that plaintiff was not disabled and that her symptoms were not caused by the accident. Dr. Nathan Gross could not exclude the possibility that plaintiff suffered a strain to her cervical or lumbar spine during the accident, but concluded that the accident would not have led to worsening of plaintiff's spinal conditions. Dr. Gross did not consider plaintiff disabled and concluded that the records did not establish shoulder pain in close proximity to the accident, and even in the absence of trauma, it would not be unusual for plaintiff to have some degree of rotator cuff pathology given her age and diabetes.

Dr. Hermann Banks concluded that plaintiff had no actual disability from her headaches. Although plaintiff testified to hitting something during the accident, the persistence of symptoms for one to one-and-a-half years after the accident was unusually long. Additionally, plaintiff's Norco use put her at risk for chronic daily headaches independent of the accident.

Dr. Jeffrey Devitt concluded that plaintiff had overall chronic neck pain for many years, and the accident could have caused a sprain, strain, or exacerbation of the degenerative changes in her cervical spine, but the accident was not specifically responsible for her current neck problems. There was no specific association of plaintiff's chronic right shoulder pain to the accident, and thus, the accident was not responsible for her current condition, and she was not disabled due to the accident.

Lastly, Dr. Bradley N. Axelrod concluded that plaintiff had no neurocognitive disorder or psychiatric conditions; she had no neuropsychological restrictions on activities, and no cognitive or emotional reasons why she could not continue to manage her own activities of daily living, including her finances, medical treatment, and transportation.

The only evidence that *might* support plaintiff's position is Dr. Gilreath's "Attending Physician's Report" and "Disability Certificate." His diagnosis was traumatic injury to multiple areas, including plaintiff's back and extremities and he checked "YES" in response to the question "ARE SYMPTOMS AND DIAGNOSIS A RESULT OF THE ACCIDENT?" He noted plaintiff's past surgery, but indicated that she had increased pain since the accident. He marked plaintiff as disabled from the date of the accident to present, and signed a disability certificate which indicated that plaintiff was disabled from housework from the date of the accident to present. However, these documents were not signed[4] until March 2018, and are contradicted by Dr. Gilreath's prior, post-accident diagnosis of plaintiff's back pain, which described the pain as chronic, as opposed to traumatic. Considering this evidence in a light most favorable to plaintiff, reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Dextrom v Wexford Cty*, 287 Mich App 406, 416; 789 NW2d 211 (2010) ("A question of fact exists when reasonable minds could differ as to the conclusions to be drawn from the evidence."). Plaintiff fails to show any objectively manifested impairment evidenced by actual symptoms or conditions that someone other than she would observe or perceive as impairing a body function. *McCormick*, 487 Mich at 196.

Additionally, plaintiff failed to show that any accident-related impairment imposed a change in her lifestyle. *Id.* at 202. Plaintiff's general ability to lead her preaccident normal life need only be affected, not destroyed; however, the extent to which her general ability to live her normal life is affected by an impairment is "undoubtedly related to what [her] normal manner of living is." *Id*. at 202-203. In granting defendant's motion for summary disposition, the trial court noted that plaintiff had restrictions before the accident, and her restrictions were "about the same" after the accident. We agree.

---

[4] Notably, plaintiff's counsel did not supply a complete answer when asked at oral argument about the circumstances surrounding Dr. Gilreath's execution of the Attending Physician's Report and Disability Certificate. Specifically, we inquired whether Dr. Gilreath filled out the forms himself after conducting a physical examination, or had counsel partially authored the documents. Counsel responded by stating that Dr. Gilreath had looked at a CAT scan. When reviewing whether summary disposition was properly granted this Court may not weigh evidence, or make credibility determinations, but must view the evidence in the light most favorable to the nonmoving party. *Dillard v Schlussel*, 308 Mich App 429, 445; 865 NW2d 648 (2014). Even if we assume that Dr. Gilreath filled out the forms himself after conducting a physical examination of plaintiff, we still cannot conclude that plaintiff carries her burden to establish a genuine issue of material fact that there had been a serious impairment of a bodily function.

Plaintiff testified that she could no longer do her housework after the accident. However, none of the four physicians who conducted independent medical evaluations concluded that plaintiff was disabled, and the disability certificate, which was limited to restrictions on doing housework, was not signed by Dr. Gilreath until March 2018.

Plaintiff asserted that she was fully independent before the accident and she continued to live alone after the accident. Plaintiff testified that she liked to cook and bake before the accident, but after, she could not stand up long enough to do so, and she could not walk farther than two blocks at a time. However, plaintiff made similar complaints before the accident when she requested a handicapped parking sticker in February 2013, and again in August 2013. Despite this, plaintiff was still able to go to Williams's lake house after the accident, and participate in activities there. Moreover, plaintiff testified that she no longer felt like doing housework, and that Williams's daily assistance with household chores began approximately a year after the accident.

Williams said that plaintiff lived a sedentary life before the accident occurred, and that when they spent time together, they would go out to eat or shopping, but that was about it. Williams did plaintiff's grocery shopping and other household chores after the accident. He helped plaintiff when he was present, but otherwise, he was not aware of anyone else helping plaintiff with these tasks in his absence. She hired a lawn care service to do her yardwork before the accident. Williams was unable to testify regarding any of plaintiff's physical mobility problems. He helped plaintiff ambulate and made sure that she did not fall, but he could not say what was wrong with her. Additionally, he testified that other than the length of her walks, he could not identify any other post-accident impact to plaintiff's lifestyle.

Plaintiff's testimony that she was able to do many tasks before the accident is contradicted by her medical history. Significant objective evidence demonstrated that, before this accident, plaintiff suffered from several chronic conditions, and led a sedentary lifestyle. She had numerous preexisting conditions, including degenerative spine, knee, and ankle issues, and diabetes. She had a total knee replacement shortly before the accident. Her preexisting knee and ankle conditions, as well as chronic back pain, hindered her mobility long before the accident.

The outpatient rehabilitation medical records provided a long list of things that plaintiff had difficulty doing after the accident, as well as things she could no longer do. She had difficulty with the following tasks: cutting with a knife, putting on her clothes and jewelry, styling and washing her hair, applying makeup, cleaning herself after using the bathroom, making her bed, preparing meals, turning the key in the ignition, fastening her seatbelt as a driver, and carrying light grocery bags. Plaintiff could no longer do the following tasks: taking off winter boots, changing bed sheets, vacuuming, emptying the dishwasher and putting the dishes away, cleaning the kitchen, lifting pots and pans, driving long distances, fastening her seatbelt as a passenger, opening and closing the passenger side door, yardwork and gardening, taking out the garbage, opening new bottles or jars, and sewing. However, the evidence shows that these are the same things she had difficulty doing before the accident. Any additional restrictions plaintiff faces are those she has imposed on herself and "do not establish the extent of any residual impairment." *McDanield*, 268 Mich App at 282. Accordingly, reasonable minds

could not differ as to the conclusion to be drawn from the evidence: plaintiff does not suffer from an accident-related impairment which imposed a change in her lifestyle.

Clearly plaintiff suffers from a myriad of maladies. However, she fails to show that any of them arose from, or were aggravated or exacerbated by the accident. Neither can she demonstrate that her general ability to lead her preaccident, normal life has been affected. Therefore, the trial court properly granted defendant's motion for summary disposition.

## V. CONCLUSION

Affirmed.

/s/ Christopher M. Murray
/s/ Michael J. Riordan