*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RICKY JONES,

       Plaintiff-Appellant,

v

ASHLEY SMITH,

       Defendant-Appellee.

UNPUBLISHED
June 9, 2022

No. 356865
Kent Circuit Court
LC No. 19-009916-NI

Before: BORRELLO, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in favor of defendant in this no-fault matter. We reverse the trial court order, and remand for further proceedings.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff has been disabled since 2002 because of depression and neck problems. He was born with two congenital defects: (1) Klippel-Feil syndrome, an incomplete separation or fusion of his cervical spine, and (2) Sprengel's deformity, one shoulder blade sits higher than the other. These defects caused plaintiff to have a shortened neck with restricted mobility, as well as chronic neck and back pain and headaches. In March 2012, plaintiff underwent C2-C5 laminectomy surgery (a fusion). Metal rods affixed by screws were inserted on each side of plaintiff's cervical spine. After this surgery, however, plaintiff continued to complain of pain, and was referred to Michigan Pain Consultants (MPC), where he treated regularly. Because of his disability, plaintiff has not worked since 2002. His days consisted of taking care of his children. He could not perform household chores, and needed his wife's help with self-care. Plaintiff was involved in a different motor vehicle accident in March 2015, wherein he failed to yield a right-of-way and his car was struck.

This case, however, arises from a motor vehicle accident that occurred on May 26, 2017, around 10:20 p.m. Plaintiff was traveling north, put on his turn signal to turn left, and came to a stop. Unable to stop, defendant rear-ended plaintiff's vehicle. Plaintiff declined medical attention at the scene, and drove himself home. Plaintiff went to the hospital the next day, was told there

was nothing wrong with him, and was sent home. A week later, he treated with his primary care physician, who found that plaintiff had no new deficits. Plaintiff continued to experience pain, so he was referred to an orthopedic surgeon, Dr. Scott Russo. In August 2019, Dr. Russo performed surgery and removed the rod placed on the right side of plaintiff's spine. Before the surgery, plaintiff claimed that his pain was so bad that he could not care for himself, or participate in activities with his children like he used to.

Plaintiff filed suit, alleging that defendant breached several duties of care, and as a proximate result of these breaches, the accident occurred, and plaintiff suffered injuries, including serious impairment of body function and aggravation of preexisting conditions. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff failed to establish that he suffered a threshold injury, or that the accident proximately caused his injury. The trial court agreed, and granted defendant summary disposition.

## II. STANDARD OF REVIEW

"This Court reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted). A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for a party's claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Glasker-Davis*, 333 Mich App at 229 (quotation marks and citation omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Issues of statutory interpretation are reviewed de novo. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017).

> When interpreting statutes, our goal is to give effect to the Legislature's intent, focusing first on the statute's plain language. In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme. When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. [*Id.* (quotation marks and footnotes omitted).]

## III. ANALYSIS

Plaintiff first argues that the trial court disobeyed MCL 500.3135(2)(a) because factual disputes existed regarding the nature and extent of plaintiff's injuries, therefore precluding the trial court from making a decision as a matter of law. We agree.

The Michigan no-fault act, MCL 500.3101 *et seq.*, requires no-fault insurers to provide first-party injury protection for certain injuries related to a motor vehicle. *Kemp*, 500 Mich at 252. Specifically, the act provides that "[u]nder personal protection insurance an insurer is liable to pay

benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." MCL 500.3105(1). Under MCL 500.3135, "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."

"The first step in interpreting MCL 500.3135 is to determine the proper role of a court in applying [the statute.]" *McCormick v Carrier*, 487 Mich 180, 192; 795 NW2d 517 (2010). MCL 500.3135(2)(a) provides, in relevant part:

> (2) For a cause of action for damages under subsection (1) or (3)(d), all of the following apply:
>
> (a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>
> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.
>
> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement. . . .

The *McCormick* Court explained,

> Under the plain language of the statute, the threshold question whether the person has suffered a serious impairment of body function should be determined by the court as a matter of law as long as there is no factual dispute regarding "the nature and extent of the person's injuries" that is material to determining whether the threshold standards are met. If there is a material factual dispute regarding the nature and extent of the person's injuries, the court should not decide the issue as a matter of law. Notably, the disputed fact does not need to be outcome determinative in order to be material, but it should be "significant or essential to the issue or matter at hand." Black's Law Dictionary (8th ed) (defining "material fact"). [*McCormick*, 487 Mich at 193-194 (footnotes omitted).]

In the instant case, the trial court concluded in its opinion and order granting summary disposition that "[p]laintiff's failure to offer rebuttal evidence settles the issue; plaintiff cannot establish a physical basis from which any alleged injury, impairment, or exacerbation arose. As a matter of law, plaintiff neither met his burden responding to this (C)(10) motion nor established the first prong of *McCormick* and for that reason alone the court grants defendant's motion." Seemingly, the trial court combined its analysis under MCL 500.3135(a)(2) with its analysis under MCL 500.3135(5), serious impairment of body function. As will be discussed more fully below, considering the evidence in a light most favorable to plaintiff, genuine issues of material fact existed regarding the nature and extent of his injuries. Therefore, the trial court erred when it made its decision as a matter of law. MCL 500.3135(a)(2).

Plaintiff argues that he provided sufficient evidence to establish that he suffered from a threshold injury, specifically, that his injuries were objectively manifested and affected his ability to lead his normal life. Although a close determination, we conclude that genuine issues of material fact existed, and summary disposition should have been denied.

To establish a serious impairment of body function, there must be (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his normal life. MCL 500.3135(5); *McCormick*, 487 Mich at 215. This is a fact-specific analysis which must be conducted on a case-by-case basis. *Id*. The aggravation of a preexisting condition can constitute a compensable injury. *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009).

Here, the trial court focused on the first requirement—that plaintiff's injury be objectively manifested. The trial court held that plaintiff failed to rebut the evidence that he did not suffer from a threshold injury. A serious impairment of body function is objectively manifested if "it is observable or perceivable from actual symptoms or conditions by someone other than the injured person." MCL 500.3135(5)(a). The focus is on how the injury affected a particular body function. *McCormick*, 487 Mich at 197. "Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018). "Medical testimony is generally, but not always, required to make this showing." *Id*.

Plaintiff first asserted in answers to interrogatories that he "suffered pain in [his] neck due to the fact that the auto accident damaged the spinal hardware I already had at that time." However, plaintiff had a CT scan and x-rays taken in 2019, and when compared with his 2012 scans and x-rays taken after his fusion surgery, Dr. Michael Votruba concluded that there was "no evidence of loosening or failure of the hardware. There is no change in position of the hardware." This was two years after the 2017 accident.

At the hearing on defendant's motion for summary disposition, plaintiff changed his argument and asserted that the accident caused his head and neck to shift, causing his skull to hit the hardware, resulting in increased pain. In support of this argument, plaintiff relied on a June 2019 office visit report from Orthopaedic Associates of Michigan, where Dr. Russo practiced, stating, "There is congenital scoliosis of the cervical spine. Postsurgical changes are appreciated. He has some erosion of the base of the skull from his right-sided rod." There is no mention of the 2017 accident in this report. The main discussion at this appointment was the possible surgical removal of the right-side hardware "that may be contributing to his symptoms." Dr. Russo could not say how long the rod was eroding plaintiff's skull. He thought it had been there for "a while," reiterating his prior testimony that it was "aggravated." He thought there were other studies suggesting that the erosion had been there for a while.

Before Dr. Russo's deposition, he provided a letter to plaintiff's attorney, stating:

I do think that the painful spinal hardware could very well have increased following the motor vehicle accident based on the nature of his current clinical situation.

-4-

I do not have specific medical records prior to the alleged motor vehicle accident. Certainly, if those records indicate that he had ongoing pain complaints related to his neck and his head, then it would be less likely that the motor vehicle collision was associated with the painful spinal hardware.

Indeed, plaintiff had years of medical records from treating at MPC indicating reports by plaintiff of high levels of pain (9/10, 10/10). Plaintiff received treatment there after his 2012 surgery, up until the 2017 accident, and thereafter.

At his deposition, Dr. Russo testified that plaintiff had preexisting conditions in his head and neck, and that the surgery performed by Dr. Luders preserved plaintiff's spinal cord so that he was not a quadriplegic. Dr. Russo testified, "my position was that the motor vehicle accident, per his report, his complaints and reports to me, escalated his clinical complaints, and so my opinion was based on those, the nature of that." Plaintiff felt subjectively worse, which to Dr. Russo, justified surgery. Dr. Russo also testified that the 2017 accident, "per his report to me, was the most clinically symptomatic situation, with his head jostled around at the time of the accident, bumped into that rod and escalated his pain. I mean, that's—simply, that's my position." When Dr. Russo was asked if there was any objective evidence that the accident caused the alleged increase in plaintiff's pain, Dr. Russo said, "you mean did I see a structural change . . . between prior studies and that study? No." Dr. Russo did not disagree with the radiology report that there was no evidence of loosening or failure of the hardware.

It is a close determination whether plaintiff met the objectively manifested requirement for a threshold injury. In considering the evidence in the light most favorable to plaintiff, as is proper for review of a motion for summary disposition under MCR 2.116(C)(10), *Glasker-Davis*, 333 Mich App at 229, it appears that genuine issues of material fact exist as to whether his impairment was objectively manifested. Although the 2019 MRI report established no change in position of his hardware, plaintiff complained of "excruciating pain" after the accident, there was evidence of erosion to his spine, and Dr. Russo surgically removed the right-sided rod to alleviate plaintiff's pain. The evidence established a genuine issue of material fact whether the 2017 accident aggravated plaintiff's preexisting conditions. Therefore, because genuine issues of material facts existed, the trial court erred when it granted defendant summary disposition.

Although not addressed by the trial court, we further note that genuine issues of material fact also exist regarding the third *McCormick* prong—plaintiff's ability to lead his normal life, *McCormick*, 487 Mich at 215, which preclude summary disposition. "Determining the effect or influence that the impairment has had on a plaintiff's ability to lead a normal life necessarily requires a comparison of the plaintiff's life before and after the incident." *Id*. at 202. "[T]he statute merely requires that a person's general ability to lead his or her normal life has been *affected*, not destroyed." *Id*. "Thus, courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*. There is no express temporal requirement as to how long an impairment must last to have an effect on the plaintiff's general ability to live his normal life. *Id*. at 203.

Plaintiff testified that before the accident, he took his kids to school and other activities, and spent a lot of time with his family. He set the table and cleaned up after dinner, got the kids

ready for bed, helped with homework, and threw a football with his sons. He conceded that he needed his wife's help before the accident with things like putting his shirt on, and that he could not help his wife with household chores like vacuuming or washing dishes. He did, however, help his wife maintain their garden and yard, which included a pool, basketball court, and trampoline. Plaintiff testified that after the accident, he felt excruciating pain, and could not do the things he was able to do before the accident. He could no longer throw a football around with his sons, and felt so much pain that he cried in front of his children for the first time. Although he had pain before the accident, his level of pain was different thereafter. His neck hurt even while he was sitting still. Plaintiff's wife attested that after the accident, plaintiff could not care for himself, perform manual tasks, sleep, lift, bend, concentrate, work around the house, drive, or have sex. He could not take the children to the park or throw a ball with them. He could not wash dishes, vacuum, or sweep the floors. They had to hire help for the pool, grass, and snow.

As such, in considering the evidence in the light most favorable to plaintiff, questions of fact exist as to whether his injuries affected his general ability to lead his normal life. Therefore, summary disposition in favor of defendant was improper.

## IV. CONCLUSION

The trial court order granting defendant summary disposition is reversed, and this matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kathleen Jansen