*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GORDON MITCHNER,

       Plaintiff-Appellant,

v

PROGRESSIVE MICHIGAN INSURANCE
COMPANY and PROGRESSIVE MARATHON
INSURANCE COMPANY,

       Defendants,

and

THOMAS JAY GAFFNEY and CHRISTINE
GAFFNEY,

       Defendants-Appellees.

UNPUBLISHED
June 23, 2022

No. 356698
St. Clair Circuit Court
LC No. 19-001865-NI

Before: GADOLA, P.J., and BORRELLO and M. J. KELLY, JJ.

GADOLA, P.J. (*dissenting*).

Plaintiff appeals as of right the order granting summary disposition to defendants, Thomas Jay Gaffney and Christine Gaffney, in this third-party automobile negligence action. Plaintiff argues the trial court erred when it granted summary disposition to defendants because there was a genuine issue of material fact whether plaintiff's injuries were a result of the motor vehicle accident and whether plaintiff's injuries constituted a serious impairment of body function that affected his ability to lead his normal life. Because I agree with the trial court's decision to grant summary disposition to defendants, I respectfully dissent.

## I. BACKGROUND

On September 4, 2016, Thomas Gaffney rear-ended plaintiff's vehicle as plaintiff was making a right turn into a parking lot. Plaintiff's truck sustained minimal damage, while Thomas's vehicle was towed from the scene. Plaintiff did not receive medical treatment the day of the

accident, but drove himself to McLaren Port Huron Hospital (McLaren Port Huron) the day after the accident, where he complained of back and neck pain and headaches. Plaintiff received an electromagnetic imaging test (x-ray) of his spine, and a computed tomography (CT) scan of his brain and spine. Plaintiff was discharged from McLaren Port Huron the same day after his treating physician, Dr. Christopher B. Roskopp, indicated the imaging results were normal and revealed no acute traumatic injury or fractures. Notably, plaintiff has an extensive history of neck and back complaints dating back to 2014.

## II. DISCUSSION

Plaintiff argues the trial court erred in granting summary disposition in favor of defendants because: (1) the accident aggravated his preexisting conditions; (2) plaintiff's injuries affected important body functions because they involved injuries to his neck and back; (3) plaintiff's injuries were objectively manifested; (4) the injuries allegedly resulting from the accident affected plaintiff's ability to lead his normal life; and (5) issues that evaluate a plaintiff's intent, credibility, or state of mind should not be resolved through summary disposition. Defendants argue plaintiff's injuries were not caused by the accident, plaintiff did not suffer a serious impairment of body function, and the accident did not impact plaintiff's ability to lead his normal life. The trial court granted summary disposition to defendants after concluding that the only injuries caused by the accident were cervical sprains and strains, and that plaintiff failed to show those injuries affected his ability to lead his normal life.

## A. CAUSATION

"In a negligence action, a plaintiff must establish both factual causation, i.e., 'the defendant's conduct in fact caused harm to the plaintiff,' and legal causation, i.e., the harm caused to the plaintiff 'was the general kind of harm the defendant negligently risked.' " *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017). "If factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue." *Id*. To prove factual causation, a plaintiff must "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Skinner v Square D Co*, 445 Mich 153, 164-165; 516 NW2d 475 (1994). "A mere possibility of such causation is not enough[.]" *Id*. at 165. A plaintiff with preexisting conditions who is injured in a motor vehicle accident may recover if he can demonstrate the accident aggravated a preexisting condition. *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009).

Plaintiff correctly argues he may recover despite his preexisting conditions. However, plaintiff's contentions that the accident aggravated his preexisting conditions do not find support in the record. While plaintiff attempts to attribute all his back and neck complaints to the accident, "[m]ere speculation or conjecture is insufficient to establish reasonable inferences of causation." *Sniecinski v. Blue Cross & Blue Shield of Mich*, 469 Mich 124, 140; 666 NW2d 186 (2003), citing *Skinner*, 445 Mich at 164. To support his contentions, plaintiff states the September 5, 2016 CT scan and x-ray, and the April 22, 2019 medical resonance imaging (MRI) of plaintiff's spine revealed more significant injuries than the imaging taken before the accident. Plaintiff also provided treatment records, which mention the accident, and argued those records contained opinions by his treating doctors that his injuries were a result of the September 2016 accident.

A review of the medical records, however, indicates the records contain evaluations of plaintiff's condition and do not present medical opinions regarding the causation of plaintiff's injuries, with the possible exception of the September 15, 2016 examination by Dr. Charbal B. Bazo. On that day, Dr. Bazo diagnosed plaintiff with cervical strain with the indication plaintiff was in an accident. The remainder of the records only state plaintiff was in an accident because plaintiff told the treating doctors he was in an accident. Indeed, records from Dr. Nick J. Reina include the statement, "[t]he pain began following a motor vehicle accident," which does not support that the accident caused the pain. Furthermore, this report of pain is listed under the heading "subjective" in the report. The records also indicate plaintiff began complaining of neck and back pain in 2014, two years before the accident.

Plaintiff's medical records indicate that in November of 2014, he went to McLaren Port Huron and complained of back pain, which plaintiff reported was ongoing for a year at that time. Dr. Anna Olovson reported plaintiff had muscle spasms in his back and gave plaintiff Toradol and Norflex injections, as well as Norco and Prednisone. In addition, plaintiff received an x-ray of his cervical spine in September of 2015, which indicated "hypertrophic spondylosis at C4-C5, C5-C6, and C6-C7," and degenerative changes. In February of 2016, plaintiff's primary care physician, Dr. Bazo, diagnosed plaintiff with headaches, neck pain, and chronic lower back pain, and referred him to Dr. Reina, a pain management physician. Plaintiff received another x-ray in February of 2016, and an MRI in April of 2016, and was again diagnosed with chronic low back pain in July of 2016. After the accident, plaintiff continued to complain of neck and back pain, which are the same complaints he had before the accident. While the CT scan and MRI of plaintiff's back and neck taken one day after the accident indicate there was a "large central disc protrusion at C3-C4," and "[a]n acute posttraumatic disc herniation [was] not excluded," Dr. Roskopp indicated the imaging results were "normal" and revealed no acute traumatic injuries.

In addition, plaintiff's reliance on the imaging reports to establish causation is misguided because he does not provide a doctor's interpretation or comparison of the reports. Plaintiff merely states affirmatively that the September 5, 2016, and April 22, 2019 imaging results reveal more severe injuries than the September 22, 2015, and February 3, 2016 imaging results. Plaintiff is not qualified to interpret those results and is merely speculating regarding the causation of his neck and back injuries, which is inadequate to survive summary disposition. *Skinner*, 445 Mich at 164. Indeed, Dr. Edward J. Mauch's impression of the April 22, 2019 imaging results indicates: "Mild facet arthropathy mid to lower lumbar spine without significant change or progression from prior MRI." Notably, the impression of any posttraumatic disc herniation is absent, and plaintiff failed to provide a medical opinion explaining the significance of the abnormality in the September 5, 2016 MRI and CT scan. A temporal connection between plaintiff's subjective complaints and imaging results and the accident, "standing alone, does not demonstrate causal connection . . . ." *West v General Motors Corp*, 469 Mich 177, 186; 665 NW2d 468 (2003).

To support their contention the accident did not cause plaintiff's injuries, defendants presented two IME reports from different doctors who concluded the imaging taken after the accident revealed plaintiff's back injuries and disc herniation were caused by degenerative changes related to plaintiff's age. Dr. Adeel Khalid noted that if the disc herniation was caused by the accident, then he would expect to see some change in the size of the herniation. The imaging of plaintiff's spine taken on April 22, 2019, does not indicate any change in the size of the disc herniation. In addition, Dr. Khalid noted there were "[a]ge appropriate diffuse degenerative

changes of the cervical spine, thoracic spine and lumbar spine," which were "unchanged when compared to relevant pre-accident radiology examinations." After a complete review of imaging done on plaintiff's back before and after the accident, Dr. Khawaja Ikram and Dr. Khalid opined the imaging reports do not reveal acute injury. Dr. Ikram opined the only injuries plaintiff may have sustained in the accident were sprains and strains of his spine. Because defendants adequately supported their summary disposition motion with two expert opinions concluding the accident was not the cause of plaintiff's most serious injuries, plaintiff had the burden to show a genuine issue of material fact regarding causation. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (citations omitted). Plaintiff failed to present medical testimony or other evidence to refute these expert opinions concerning causation. While plaintiff may have suffered back sprains and strains as a result of the accident, there is no objective evidence that the accident caused plaintiff's most severe injuries. The trial court did not err when it granted summary disposition to defendants on this basis.

## B. SERIOUS IMPAIRMENT OF BODY FUNCTION

Under MCL 500.3135(1),[1] an individual is subject to "tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135 further states:

> (2) For a cause of action for damages pursuant to subsection (1) filed on or after July 26, 1996, all of the following apply:
>
>> (a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:
>>
>>> (*i*) There is no factual dispute concerning the nature and extent of the person's injuries.
>>>
>>> (*ii*) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement.
>
> *     *     *
>
> (5) As used in this section, "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life. [MCL 500.3135(2), (5).]

---

[1] Because the accident occurred in September of 2016, references to MCL 500.3135 are to the 2016 version of the statute.

Our Supreme Court has held, as a threshold matter:

> [T]he court should determine whether there is a factual dispute regarding the nature and extent of the person's injuries, and, if so, whether the dispute is material to determining whether the serious impairment of body function threshold is met. If there is no factual dispute, or no material factual dispute, then whether the threshold is met is a question of law for the court. [*McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010) (citations omitted).]

"If the court may decide the issue as a matter of law, it should next determine whether the serious impairment threshold has been crossed." *Id.*

The statutory definition of "serious impairment of body function" requires a plaintiff to establish: "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *Id.* at 195. With respect to the first prong, our Supreme Court determined an objectively manifested impairment is "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id.* at 196. "[W]hen considering an 'impairment,' the focus 'is not on the injuries themselves, but how the injuries affected a particular body function.' " *Id.* at 197 (citation omitted). However, to satisfy the "objectively manifested impairment" prong, "plaintiffs must 'introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering' and that showing an impairment generally requires medical testimony." *Id.* at 198, quoting *DiFranco v Pickard*, 427 Mich 32, 74; 398 NW2d 896 (1986), superseded by statute as stated in *McCormick*, 487 Mich at 190-191.

With respect to the second prong of "serious impairment of body function," our Supreme Court has determined an important body function is one that has "great value, significance, or consequence" to an individual. *McCormick*, 487 Mich at 199 (quotation marks omitted). Whether a body function is important is a subjective inquiry that must be analyzed on a case-by-case basis. *Id.* Finally, our Supreme Court determined the common understanding of the phrase to " 'affect the person's ability to lead his or her normal life' is to have an influence on some of the person's capacity to live in his or her normal manner of living." *Id.* at 202. This "necessarily requires a comparison of the plaintiff's life before and after the accident." *Id.* When comparing a plaintiff's life before and after the accident, our Supreme Court noted:

> [T]he plain language of the statute only requires that some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected. Thus, while the extent to which a person's general ability to live his or her normal life is affected by an impairment is undoubtedly related to what the person's normal manner of living is, there is no quantitative minimum as to the percentage of a person's normal manner of living that must be affected. [*Id.* at 202-203.]

In addition, there is no temporal requirement "as to how long an impairment must last in order to have an effect on 'the person's general ability to live his or her normal life.' " *Id.* at 203.

On the issue of an objectively manifested injury, plaintiff argues he established an objectively manifested injury, and details all the treatment he received after the accident. Defendants argue plaintiff has not suffered any objectively manifested injuries caused by the accident. Despite plaintiff's contentions the trial court did not view the evidence in a light most favorable to plaintiff, the trial court determined: "In the light most favorable to Plaintiff, it can be said that the car accident was the cause of a cervical strain based on the reports of Dr. Bazo and Dr. Ikram."

As indicated, defendants provided opinions from two doctors who both concluded plaintiff's more severe back injuries, like his disc herniation, were the result of age-related degenerative conditions rather than the accident. Dr. Khalid even noted that if the disc herniation was a result of the accident, the April 22, 2019 MRI should have revealed a "definite change in the appearance of th[e] disc herniation" because acute disc herniations change their shape or size over time. While plaintiff provided medical records from his treating physicians, those records do not contain physician opinions regarding the causation of plaintiff's injuries. On September 15, 2016, Dr. Bazo diagnosed plaintiff with cervical strain, and merely noted plaintiff was in an accident. Conversely, in the IME reports, both doctors concluded plaintiff suffered no acute injuries from the accident, and Dr. Ikram stated the only injuries plaintiff may have received from the accident were cervical sprains and pains, which have since resolved. Plaintiff argues the trial court improperly placed greater weight on the IME reports than the medical records provided by plaintiff, but this argument ignores that the medical records do not contain the opinions of plaintiff's medical providers with respect to causation. Therefore, the trial court did not err when it determined the only injuries plaintiff incurred as a result of the accident were cervical strains and sprains.

With respect to the second prong of the analysis, plaintiff argues his neck and back injuries constitute important body functions, and supports his contentions by relying on Michigan caselaw stating the same. This contention is not disputed because defendants only contend plaintiff cannot meet the first and third prong of the serious impairment of body function analysis established by *McCormick.* Plaintiff is correct in noting Michigan courts have found injuries to an individual's back and neck constitute an important body function. See *Netter v Bowman*, 272 Mich App 289, 306; 725 NW2d 353 (2006), overruled on other grounds by *McCormick*, 487 Mich at 197 n 11 (finding movements of an individual's back and neck are important body functions). However, plaintiff must still establish his cervical sprain and strain impacted his ability to lead his normal life.

Regarding the third prong of the analysis, plaintiff argues he established his injuries affected his ability to lead his normal life through the medical records and his own deposition testimony. Plaintiff also argues this issue was a battle of the experts because his own medical providers came to different conclusions about the causation of his injuries than the IMEs did. Plaintiff supported his position by relying on several unpublished opinions and noting he "continues to experience daily pain and limitations, affecting his ability to maintain his household, sleep, socialize, travel, and otherwise enjoy life." An impairment affects an individual's ability to lead his normal life when it has "an influence on some of the person's capacity to live in his or her normal manner of living." *McCormick*, 487 Mich at 202. Plaintiff has presented evidence, in the form of deposition testimony, establishing plaintiff used to run, lift weights, play with his children, and take care of his household before the accident. Plaintiff indicated he can no longer do any of

those activities, and must rely on the help of others to complete household chores. But plaintiff also indicated that after the accident he could mow the lawn, and medical records indicate he continued working in jobs that required him to lift heavy items. In any case, plaintiff failed to present evidence that the impact on his ability to lead his normal life was caused by injuries he sustained in the accident rather than his preexisting conditions.

Before the accident, plaintiff was regularly being treated for neck and back pain, and indicated his back pain was intense and "cramping-like." Plaintiff also took Norco for some time leading up to the accident, and was referred to a chronic pain management specialist on February 2, 2016, for management of his headaches, neck, and back pain. Plaintiff received several imaging tests before the accident, which indicated hypertrophic spondylosis at C4-C5, C5-C6, and C6-C7, mild degenerative changes, endplate spondylosis, subtle anterolisthesis at C7-T1, facet arthropathy, and possible calcifications of sacroiliac joints. The records also indicate plaintiff received a CT scan and an x-ray of his back the day after the accident. The x-ray of plaintiff's back indicated plaintiff had facet arthropathy and "[m]ild anterior endplate spondylosis at C4-C5," but was negative for fracture or acute traumatic injury. Plaintiff also received a CT scan of his brain and C-spine, which plaintiff's treating physician, Dr. Roskopp, indicated was negative for fracture or acute traumatic injury. However, the CT scan indicated there was "very mild endplate spondylosis such as at C3-C4 and C4-C5" and a "large central protrusion at C3-C4 contributing to moderate central spinal canal stenosis." Dr. Bazo's records indicate the only new diagnosis after the accident was for cervical strain. Thus, the evidence presented only established plaintiff incurred a cervical sprain and strain as a result of the accident. Although plaintiff was disabled from work for 10 days after Dr. Bazo diagnosed him with a cervical strain, there is no indication the remainder of plaintiff's alleged difficulties in leading his daily life resulted from the accident. Plaintiff made the same complaints after the accident as he did before the accident, except for the back and neck sprain. Thus, plaintiff failed to establish the cervical sprain and strain impaired his ability to lead his normal life. The trial court, therefore, did not err in granting summary disposition to defendants on this additional basis.

For the reasons stated, I would affirm the trial court's grant of summary disposition in favor of defendants.


/s/ Michael F. Gadola

-7-