*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ASHTON DONALDSON,

      Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellant.

UNPUBLISHED
September 28, 2023

Nos. 363048; 363650
Macomb Circuit Court
LC No. 2019-001705-NI

---

ASHTON DONALDSON,

      Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellee.

No. 364991
Macomb Circuit Court
LC No. 2019-001705-NI

---

Before: SHAPIRO, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Plaintiff, Ashton Donaldson, brought this action against defendant, State Farm Mutual Automobile Insurance Company, for recovery of uninsured motorist benefits. Following a jury trial, the court entered a judgment awarding Donaldson $250,000 for past and present noneconomic damages and $100,000 for future noneconomic damages, consistent with the jury verdict. The court later granted State Farm's motion for remittitur and reduced the total judgment to $250,000.00, consistent with the terms of the automobile insurance policy. State Farm appeals the judgment as of right in Docket Nos. 363048 and 363650. The court granted Donaldson's postjudgment motion for taxable costs under MCR 2.625, but denied his request for case

-1-

evaluation sanctions under MCR 2.403. Donaldson appeals the denial of case evaluation sanctions in Docket No. 364991. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

On December 6, 2018, Donaldson was driving a vehicle that was stopped at a red traffic signal when another vehicle rear-ended his vehicle and then fled the scene. Donaldson declined medical treatment at the scene and drove himself home. Shortly after arriving home, however, he began experiencing sensitivity to light and pain in his back and neck, so he drove himself to the hospital and was treated in the emergency room. He remained in the hospital overnight. Donaldson was told that, although he did not strike his head during the crash, he had a subdural hematoma.

Dr. Vittorio Morreale provided a consult on Donaldson's condition while Donaldson was in the hospital and provided some follow-up treatment after Donaldson was discharged. Dr. Morreale diagnosed Donaldson with a small subdural hematoma while Donaldson was still in the hospital. Donaldson's complaints regarding headaches and memory loss were also consistent with head trauma. While the hematoma was no longer visible after a few months, Donaldson could have continued to feel the effects of that injury.

Shortly after Donaldson was discharged from the hospital, he sought treatment for back and neck pain, among other complaints, from his chiropractor, Dr. David McFadden. Dr. McFadden referred Donaldson for magnetic resonance imaging (MRI) tests of the spine in December 2018. The MRI of Donaldson's neck showed that there were "[d]isc bulges at the C4-5 and C5-6 levels, indenting the ventral thecal sac" and "[l]imited spinal excursion through the flexion and extension studies, that could represent musculoligamentous sprain/spasm under appropriate clinical settings." An MRI of Donaldson's lower back showed "a Schmorl's node at the superior endplate of L5 vertebra."[1]

Donaldson also treated with Dr. Stephen Wilson, who explained that Donaldson suffered a whiplash injury, which caused muscles and ligaments in the neck to be stretched and damaged. Depending on the severity of the injury, it can also cause injuries to the back. Dr. Wilson diagnosed Donaldson with a cervical spine sprain of the ligament, a lumbar strain of the ligament, a thoracic spine strain of the ligament, and numbness down his leg, due to paresthesia of the skin. In addition to medication, Donaldson was prescribed physical therapy and advised to continue treatment with his chiropractor.

Despite progress in treating his injuries, Donaldson continued to suffer from the effects of his injuries. However, he was able to return to work after approximately eight months. Subsequent MRIs showed that the subdural hematoma was no longer present in February 2019, and had been reabsorbed by the brain.

---

[1] A Schmorl's node is a type of disc herniation where the disc material herniates into the bone of the spine. A Schmorl's node can be caused by trauma.

State Farm denied Donaldson's claim for recovery of uninsured motorist benefits. According to State Farm's claims adjuster, Tamara Beason, State Farm disputed that Donaldson's injuries were caused by the December 2018 motor vehicle accident and that Donaldson's injuries arose to the level of a serious impairment of a body function, which was necessary for Donaldson to recover uninsured motorist benefits under the terms of his policy.

Following the presentation of Donaldson's proofs, the trial court directed a verdict for Donaldson on the issue of whether Donaldson suffered a subdural hematoma caused by the crash. The court instructed the jury that Donaldson suffered a subdural hematoma in the motor vehicle crash, which was diagnosed in the hospital after the accident. The jury was still required to determine whether that injury, or Donaldson's other alleged injuries, constituted a serious impairment of a body function. Further, the trial court denied State Farm's motion for a directed verdict on the issue whether the MRIs taken while Donaldson was in the hospital showed injuries that were caused by the motor vehicle crash.

The jury returned a verdict in Donaldson's favor, awarding him $250,000 for past and present noneconomic damages and $100,000 for future noneconomic damages. As noted above, the court reduced the total judgment to $250,000, which was the policy limit, awarded Donaldson taxable costs, and denied Donaldson's request for case evaluation sanctions.

## II. BEASON'S TESTIMONY

### A. STANDARD OF REVIEW

State Farm argues that the court erred by denying its pretrial motion to quash a subpoena issued to Beason and to strike Beason from Donaldson's witness list. State Farm also contends that Beason's testimony was substantively inadmissible. A trial court's decision whether to allow a party to amend a witness list or add a witness is reviewed for an abuse of discretion. *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1991). "A trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo." *Shivers v Covenant Healthcare Sys*, 339 Mich App 369, 373; 983 NW2d 427 (2021) (citations omitted).

### B. ANALYSIS

Donaldson's original witness list, filed in September 2019, generally indicated that he planned to call State Farm's "agents, servants, and/or employees." On September 24, 2021, which was approximately two weeks before trial was scheduled to begin, Donaldson added Beason's name to his witness list. In doing so, Donaldson failed to comply with MCR 2.401(I)(1)(a), which requires a party to timely file a witness list that includes "the name of each witness, and the witness' address, if known; however, records custodians whose testimony would be limited to providing the foundation for the admission of records may be identified generally[.]" Nevertheless, under MCR 2.401(I)(2), the trial court had discretion to allow Donaldson to add Beason as a witness.

In considering whether an unnamed witness should be barred from testifying, a trial court should consider the following nonexhaustive list of factors:

(1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect; and (8) whether a lesser sanction would better serve the interests of justice. [*Duray Dev, LLC v Perrin*, 288 Mich App 143, 165; 792 NW2d 749 (2010).]

"Witness lists are an element of discovery" and are required "to avoid 'trial by surprise.' " *Grubor Enterprises, Inc v Kortidis*, 201 Mich App 625, 628; 506 NW2d 614 (1993) (citation omitted). Where justice so requires, a trial court should not be reluctant to allow an unlisted witness to testify. *Pastrick v Gen Tel Co of Mich*, 162 Mich App 243, 245; 412 NW2d 279 (1987).

The record discloses that State Farm anticipated that its claims representatives for Donaldson's case would be called to testify. In April 2021, State Farm requested that the court allow the no-fault benefits claims specialists assigned to Donaldson's case to testify remotely due to the COVID-19 pandemic. Although these claims representatives handled the no-fault aspect of Donaldson's case, Beason was assigned to handle the claim for uninsured motorist coverage, so State Farm should not have been surprised or prejudiced by the late addition of her name to the witness list. Moreover, because Beason was State Farm's employee and State Farm had assigned her to handle the claim, it had knowledge of her anticipated testimony and could not claim that it would be surprised by it. Next, State Farm did not show that Donaldson engaged in any intentional or willful tactics to deny it discovery. Donaldson sought to amend his witness list only one other time during this litigation, and there were no allegations that he had a history of refusing to comply with the court's orders to gain a tactical advantage. Accordingly, the court did not abuse its discretion by allowing Donaldson to call Beason as a witness.

State Farm next asserts that Beason's testimony was not relevant under MRE 401, and therefore, it was inadmissible under MRE 402. "Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." *Lewis v LeGrow*, 258 Mich App 175, 199; 670 NW2d 675 (2003), citing MRE 401. We conclude that Beason, who is not a medical expert, was not qualified to testify as an expert under MRE 702 regarding Donaldson's medical condition, and it was up to the jury to determine whether Donaldon suffered a serious impairment of a body function. However, Donaldson had filed an action for breach of contract because of State Farm's refusal to provide uninsured motorist coverage, and Beason was assigned to handle the claim, which involved reviewing medical records and determining whether Donaldson met the threshold requirement of a serious impairment of a body function. MRE 701 allows for opinion testimony of lay witnesses so long as the opinions "are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

Beason's job was to review the medical records of claimants to determine if they were eligible for benefits, including whether they had a serious impairment of a body function. Beason's testimony, including her evaluation of Donaldson's medical records and how those records affected State Farm's decision to deny uninsured motorist coverage, was relevant to assist the jury in understanding why defendant denied Donaldson's claim, and whether it breached the terms of its policy by doing so.

Contrary to what State Farm argues, Beason's testimony did not involve actual medical opinions that she was not qualified to offer. Beason was only asked to explain her process in reviewing claims and why she believed that Donaldson was not entitled to uninsured motorist coverage. Although this encompassed her review of medical experts' opinions and medical records, she was not offering her own opinions of that evidence as a medical expert. Rather, she only explained how she utilized that information as a layperson in deciding whether Donaldson qualified for uninsured motorist benefits. Accordingly, the court did not abuse its discretion by finding that Beason's testimony was relevant and admissible.

State Farm also argues that Beason's testimony should have been excluded because it involved protected work product. See MCR 2.302(B)(3)(a). However, State Farm has not identified where Beason was required to disclose any work product prepared in anticipation of this litigation. Instead, State Farm offered its own claims file after redacting any privileged information. Thus, State Farm conceded that information it possessed about Donaldson's claim was relevant and admissible. The claims file contained Donaldson's medical records, which were not subject to the work-product privilege. If State Farm believed that Beason was asked specific questions that involved protected work product, State Farm should have made contemporaneous objections to those specific questions on that basis, which it did not do. Instead, State Farm made only a general objection that any evaluation Beason made about this case after the lawsuit was filed was protected work product. The trial court did not abuse its discretion by rejecting that argument and by limiting Beason's testimony to her explanation for why Donaldson's claim was denied, which did not involve protected work product.

## III. DIRECTED VERDICT

### A. STANDARD OF REVIEW

State Farm argues that the trial court erred by denying its motion for partial directed verdict and by granting Donaldson's motion for partial directed verdict. A trial court's ruling on a motion for a directed verdict is reviewed de novo. *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015). "A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law." *Id*.

B.  ANALYSIS

1.  STATE FARM'S MOTION FOR DIRECTED VERDICT

State Farm moved for a partial directed verdict on the issue of whether the disc bulges and Schmorl's node were related to the motor vehicle crash.  The court denied the motion.[2]  After the jury returned a verdict, State Farm moved for reconsideration, which the court also denied.  On appeal, State Farm argues that the evidence presented failed to show factual causation.  Factual causation requires a showing that, "but for" another's actions, the plaintiff's injury would not have occurred.  *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994).  In *Skinner*, the Court adopted the following guidelines for determining if a plaintiff has met his burden in proving cause in fact:

> All that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility.  The evidence need not negate all other possible causes, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty.  Absolute certainty cannot be achieved in proving negligence circumstantially; but such proof may satisfy where the chain of circumstances leads to a conclusion which is more probable than any other hypothesis reflected by the evidence.  However, if such evidence lends equal support to inconsistent conclusions or is equally consistent with contradictory hypotheses, negligence is not established.  [*Id*. at 166-167 (quotation marks and citation omitted).]

Specifically, State Farm argues that Donaldson failed to produce medical evidence that connected his neck and back injuries to the motor vehicle accident.  State Farm seems to contend that Donaldson needed unequivocal evidence associating his injuries to the crash, but even if these injuries were preexisting conditions, "the aggravation or triggering of a preexisting condition can constitute a compensable injury." *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009).  State Farm points out that that Dr. Wilson diagnosed and treated Donaldson for soft-tissue injuries, and that there was no connection between the MRI images related to the spine and the accident.  State Farm's argument ignores the overall evidence regarding Donaldson's initial diagnosis and treatment.

First, Dr. McFadden referred Donaldson for the MRIs shortly after the accident to determine if there was damage to the spine from the accident.  The MRI images confirmed that there was disc damage to both the lumbar and cervical areas.  The results of the lumbar MRI in particular were linked to the symptoms that Donaldson's doctors treated when the radiologist noted that there was "[l]imited spinal excursion through the flexion and extension studies, that could represent musculoligamentous sprain/spasm under appropriate clinical settings."

---

[2] To the extent that State Farm argues that the trial court failed to provide adequate reasons for denying its motion for a directed verdict during trial, the court's opinion denying the motion for reconsideration rectified any error because the court thoroughly explained why it denied the motion for a directed verdict.

Second, Dr. Wilson noted sprains in his treatment of Donaldson. Dr. Wilson treated Donaldson after he was seen at the ER. He described how a whiplash injury can cause damage to the cervical and lumbar spine. He also reviewed the MRI images, explaining where they showed disc bulges in the spine. Dr. Wilson also testified that Donaldson had a Schmorl's node in his vertebrae, which is a type of disc herniation that can cause pain after a traumatic event. At the time he examined Donaldson, Dr. Wilson found that he was neurologically intact, but was suffering from pain primarily from strains and sprains in these same areas. Dr. Wilson concluded that the pain and injuries were most likely caused by the motor vehicle crash.

Third, Dr. Morreale briefly addressed the Schmorl's node. He did not offer an opinion as to whether it was caused by the crash or if it became symptomatic after the accident. However, he explained that if Donaldson did not complain about that condition before the accident and it was only diagnosed afterward, it was more likely than not attributable to the crash, at least in part. Overall, although Dr. Morreale offered limited testimony on the Schmorl's node, he explained how it could be connected to the accident, even if it involved a preexisting condition.

Finally, Dr. Daniel Harvey, a doctor of physical therapy, stated that he was not aware of another source of Donaldson's injuries to the cervical and lumbar regions, other than the crash, and based on his treatment of Donaldson and information provided by Donaldson, it seemed likely that the impairments were caused by the crash.

In sum, Donaldson offered medical testimony that linked his condition just after the crash, which included the results of the MRIs, to the continuing pain he suffered in his lumbar and cervical spine areas. Dr. Wilson, in particular, believed that Donaldson's continuing pain in these areas was likely caused by the crash. While there was no evidence directly stating that the results of the MRIs of the spine were related to the crash, the testimony of Donaldson's medical experts as a whole factually supported his claim that his injuries in the lumbar and cervical spine areas were caused by the crash, and the MRIs provided objective proof of those injuries shortly after the collision. Because, viewing the evidence most favorably to Donaldson, the timeline of events, coupled with the medical experts' explanations of the nature of Donaldson's injuries, was sufficient to allow the jury to find that the injuries that plaintiff continued to complain of involving his back and neck were caused by the accident, the trial court did not err by denying State Farm's motion for a directed verdict on that issue.

## 2. DONALDSON'S MOTION FOR A DIRECTED VERDICT

State Farm next asserts that the trial court erred by directing a verdict for Donaldson on the issue of whether he suffered a subdural hematoma caused by the crash because Dr. Morreale did not conclusively establish that Donaldson had a subdural hematoma when he was in the hospital after the crash, and because State Farm's expert, Dr. Casey, who was relying on the CT scan *reports*, testified that there might not have been a subdural hematoma. We disagree.

Dr. Morreale testified at trial that the CT scan *images* from when Donaldson was in the hospital showed that Donaldson had a subdural hematoma. Dr. Morreale explained that the other records did not include the diagnosis of a subdural hematoma because it was overlooked. Moreover, Donaldson produced a record from Dr. Morreale's consult on Donaldson's case from December 7, 2018, when Donaldson was still in the hospital, which stated that Dr. Morreale had

reviewed the head CT scans from December 6 and December 7 and found that Donaldson had "a stable small RT temporo-parietal SDH," and a subdural hematoma was included on Donaldson's discharge diagnoses. Dr. Morreale stated that "SDH" refers to subdural hematoma.[3] Accordingly, contrary to State Farm's argument that Dr. Morreale's trial testimony regarding a subdural hematoma was not reliable because he did not first mention a subdural hematoma until years later, there was a contemporaneous record supporting Dr. Morreale's testimony that Donaldson was diagnosed with a subdural hematoma while at the hospital immediately after the crash.[4]

Admittedly, Dr. Casey testified that the records he reviewed did not indicate that there a subdural hematoma. But Dr. Casey did not review the imaging records on which Dr. Morreale relied to conclude that there was a subdural hematoma, so his testimony failed to establish a question of fact regarding the basis for Dr. Morreale's opinion.

Under the circumstances, the trial court did not err by directing a verdict for Donaldson on the limited issue whether Donaldson was diagnosed with a subdural hematoma caused by the crash.

## IV. GREAT WEIGHT OF THE EVIDENCE

State Farm asserts that the jury's verdict is against the great weight of the evidence. To preserve a claim that a jury's verdict is against the great weight of the evidence, a party must raise the issue before the trial court in a motion for a new trial. *Hyde v Univ of Mich Bd of Regents*, 226 Mich App 511, 525; 575 NW2d 36 (1997). In a civil case, where a party fails to raise a great-weight issue in a motion for a new trial, the issue is waived. *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 464; 633 NW2d 418 (2001); see also *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___; ___ NW2d ___ (Docket No. 359090, issued June 15, 2023), slip op at 2-4 (in a civil case, an issue is waived if it is not raised before the trial court, and the issue is not subject to review for plain error). Because State Farm did not raise this issue in a motion for a new trial before the trial court, the issue has been waived and we decline to consider it.

## V. CASE EVALUATION SANCTIONS

In his brief on appeal, Donaldson argued that the trial court erred by denying his request for case evaluation sanctions under former MCR 2.403(O)(1). At oral argument, however, he withdrew that argument from this Court's consideration. Consequently, we will not address it.

---

[3] Beason agreed that Dr. Morreale diagnosed a subdural hematoma and that the imaging records showed a subdural hematoma.

[4] Later references in Donaldson's records to there being no subdural hematoma only explained that the hematoma had been reabsorbed by the brain, not that there was never a subdural hematoma after the crash.

In Docket Nos. 363048 and 363650, we affirm the judgment for Donaldson. In Docket No. 364991, we affirm the issue raised solely because it was withdrawn from consideration at oral argument. Donaldson, as the prevailing party in Docket Nos. 363048 and 363650, may tax costs. MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Thomas C. Cameron