*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CICILY JOHNSON,

      Plaintiff-Appellant,

v

SHARON MARIE GARDNER,

      Defendant,

MSJ AUTOMOTIVE TRADINGS LLC, a/k/a
MSJ AUTOMOTIVE TRADING LLC,

      Defendant-Appellee,
and

MSJ AUTOMOTIVE INC,

      Defendant.

UNPUBLISHED
December 21, 2023

No. 363012
Wayne Circuit Court
LC No. 21-008464-NI

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Plaintiff, Cicily Johnson, appeals as of right the July 22, 2022 order of the Wayne Circuit Court granting defendant, MSJ Automotive Tradings, LLC, summary disposition under MCR 2.116(C)(10). Plaintiff asserts the trial court erred when it held plaintiff had not presented sufficient evidence of a serious impairment of body function, as required by MCL 500.3135. We affirm.

## I. FACTS

On July 16, 2018, plaintiff was driving on Livernois Avenue in Detroit when defendant Sharon Gardner's vehicle attempted a U-turn and struck the front passenger side of plaintiff's vehicle. Gardner's vehicle was owned by defendant-appellee MSJ Automotive Tradings, LLC (MSJ). Plaintiff struck her back on the seat of her vehicle during the collision. Plaintiff complained of back pain to emergency responders so she was taken to the hospital by ambulance.

The emergency room doctor diagnosed plaintiff with muscle strain. She was given ibuprofen and released from the hospital the same day with instructions to treat with warm compresses and follow up with a sports medicine physician.

Three days later, plaintiff sought treatment for neck and back pain at NextGen Pain Associates and Rehab. There, Dr. Griesser diagnosed plaintiff with chronic pain due to trauma, low back pain, and pain in the thoracic spine. His assessment states, "In my professional opinion, it is my medical determination that the injuries sustained by the above named patient were a direct result from the MVA that occurred on: 07162018." Dr. Griesser restricted plaintiff from working, driving, and doing housework for one month. Plaintiff was also referred for physical therapy and x-rays of her spine.

Plaintiff attended physical therapy from July 23, 2018, to January, 2019. The physical therapy records indicate diagnoses of cervicalgia (neck pain[1]), lumbago, and thoracic strain. To treat her back pain, plaintiff utilized a stationary bike, other machines, as well as hot and cold packs. Plaintiff returned to Dr. Griesser on August 9, 2018, with continuing complaints of back pain. Dr. Griesser's notes indicate "mild stiffness… mid/lower…," but most of his handwritten notes are illegible. Plaintiff was prescribed Naproxen and Lidoderm and again referred to physical therapy. Dr. Griesser restricted plaintiff from working, driving, and doing housework for another month. Plaintiff continued to see Dr. Griesser once a month in September, October, and November, 2018, and twice in January 2019. The record from January 3, 2019, indicates a new diagnosis of cervicalgia. After plaintiff's last visit on January 30, 2019, Dr. Griesser allowed plaintiff to return to work but in a "sitting job only" and extended her driving and housework restrictions for another month.

On September 24, 2018, plaintiff presented for MRIs of her cervical and thoracic spine. The cervical spine MRI was deemed "unremarkable" by the doctor; no fractures or bruises were discovered. The thoracic spine MRI revealed "[a]ltered signal intensity of the T12 vertebral body may represent mild degenerative endplate changes or a small hemangioma[2]." But the thoracic spine was "otherwise unremarkable."

Plaintiff also attended therapy with psychologist Dr. Michael Katz, but he passed away and the location of his records is unknown. The only record presented from this provider was a bill from December 12, 2019, that listed plaintiff's diagnoses of "[p]ost-traumatic stress disorder, chronic caused by motor vehicle accident" and "[m]ajor depressive disorder, recurrent, severe without [illegible], caused by motor vehicle accident."

---

[1] The trial court defined cervicalgia as "neck pain" referencing this Court's provided definition in *Al-Mohsin v Davidson*, unpublished per curiam opinion of the Court of Appeals, issued August 20, 2020 (Docket No. 350893), p 2 n 4.

[2] During the hearing on defendant's motion for summary disposition, defense counsel provided a definition of "hemangioma" as a "small collection of blood vessels" that is "basically just a vascular birthmark."

Plaintiff was sixteen years old at the time of the accident. Plaintiff testified she was unable to drive or work after the accident due to the neck and back pain she experienced from driving and standing for long periods of time. Because the accident occurred during summer break, plaintiff did not miss any school. Following the accident, plaintiff's mother assisted her with household chores. Plaintiff began to experience two to three headaches per month following the accident. She also self-reported anxiety when driving and had trouble sleeping. Before the accident, plaintiff was on her high school track team. Plaintiff chose not to try out for the track team her senior year due to the discomfort she felt in her neck and back after the accident.

In 2017, before the subject accident, plaintiff presented for an x-ray of the spine to evaluate for scoliosis. The hospital records indicate plaintiff had a history of chest and back pain. The evaluating doctor found plaintiff had "S-shaped scoliosis of the thoracolumbar spine…." Following the subject accident, plaintiff had another x-ray of the spine that showed plaintiff had "stable scoliosis."

Plaintiff filed her complaint on July 13, 2021, alleging four counts: Count I – Negligence against defendant Gardner; Count II – Owner's Liability against defendant MSJ; Count III – Negligent Entrustment against defendant MSJ; and Count IV – Respondeat Superior against defendant MSJ. Defendant Gardner was dismissed as a party because plaintiff served the wrong Sharon Gardner. Plaintiff alleged she suffered a serious impairment of a body function as a result of the car accident.

Defendant MSJ filed its motion for summary disposition pursuant to MCR 2.116(C)(10) alleging plaintiff had not suffered an impairment of a body function as a result of the accident. Specifically, defendant asserted that the medical records did not establish an objectively manifested impairment because only plaintiff's subjective complaints of neck and back pain were documented. Further, defendant claimed plaintiff's ability to lead her normal life had not been affected by the accident. Plaintiff countered that the abnormal signal at the T12 vertebrae, the diagnosis of cervicalgia, and plaintiff's psychological diagnoses all constitute objectively manifested impairments of a body function. In reply, defendant asserted the abnormal signal and cervicalgia were not objectively manifested impairments nor related to the subject accident. Defendant further argued plaintiff had not presented any evidence that plaintiff's psychological diagnoses affect a particular body function.

The trial court heard oral arguments on defendant's motion on July 19, 2022. Plaintiff's counsel cited to her diagnosis of cervicalgia and the increased signal at T12 as objectively manifested impairments of an important body function, but he conceded the rest of the medical records noted only plaintiff's subjective complaints of pain. The trial court granted defendant summary disposition on the basis that plaintiff presented insufficient evidence of an objectively manifested impairment that is observable or perceivable from actual symptoms or conditions as required by *McCormick v Carrier*, 487 Mich 180, 193; 795 NW2d 517 (2010). The trial court found that "no reasonable jury could find that the evidence presented establishes the requirement under the first prong of *McCormick*…." Thus, the trial court did not reach the issue whether plaintiff's ability to lead her normal life was changed as a result of the accident. Plaintiff timely filed a motion for reconsideration. The trial court denied plaintiff's motion without oral argument. Plaintiff appeals.

## II. STANDARD OF REVIEW

This Court reviews de novo the trial court's decision to grant or deny a motion for summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). When reviewing a motion under (C)(10), the trial court must consider the affidavits, pleadings, depositions, and other evidence in the light most favorable to the nonmoving party. *Id*. The court is not permitted to assess credibility or determine facts on a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Id*. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the evidence shows there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

Questions of statutory interpretation, construction, and application are also reviewed de novo. *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019). We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Woods v SLB Property Management, LLC*, 277 Mich App 622, 629; 750 NW2d 228 (2008).

## III. DISCUSSION

Plaintiff asserts the trial court erred in granting defendant's motion for summary disposition because there is at least a question of fact as to whether plaintiff suffered a serious impairment of an important body function. Plaintiff argues the abnormal signal at the T12 vertebrate, diagnosis of cervicalgia, her psychological conditions, and muscle spasms all constitute objective findings of impairments. However, Dr. Griesser's finding of muscle spasms is supported only by his deposition testimony, which was not considered by the trial court because (1) it was produced for the first time with plaintiff's motion for reconsideration, and (2) the deposition was taken in connection with plaintiff's prior first-party lawsuit against her insurer. Because this deposition could have been introduced prior to the grant of summary disposition, as it was presumably within plaintiff's knowledge, the trial court did not abuse its discretion by refusing to consider this evidence for the first time on reconsideration. See *Woods*, 277 Mich App at 630 ("We find no abuse of discretion in denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order.") (citation omitted). Therefore, whether plaintiff's abnormal vertebrate signal, cervicalgia, and her psychological diagnoses constitute serious impairments of body functions are the only issues on appeal.

The Michigan no-fault insurance act limits tort liability for noneconomic damages to instances in which the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement. MCL 500.3135(1). MCL 500.3135(2) provides:

(a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

-4-

(i) There is no factual dispute concerning the nature and extent of the person's injuries.

(ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement….

"Under the plain language of the statute, the threshold question whether the person has suffered a serious impairment of body function should be determined by the court as a matter of law as long as there is no factual dispute regarding 'the nature and extent of the person's injuries' that is material to determining whether the threshold standards are met." *McCormick v Carrier*, 487 Mich 180, 193; 795 NW2d 517 (2010). Before determining the issue as a matter of law, a trial court must determine whether there is a material factual dispute regarding the nature and extent of the person's injuries. *Id*. at 215. "[T]he disputed fact does not need to be outcome determinative in order to be material, but it should be significant or essential to the issue or matter at hand." *Id*. at 194 (citation and quotation marks omitted).

If the trial court determines there is no material factual dispute, it must then determine if the plaintiff has met the liability threshold. The statute defines a "serious impairment of body function" as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). Thus, there are three elements a plaintiff must prove to establish a serious impairment of body function: (1) an objectively manifested impairment, (2) of an important body function, (3) that affects the person's general ability to lead her normal life. See *McCormick*, 487 Mich at 195 (discussing the prior version in MCL 500.3135(7). The analysis is fact-specific and must be conducted on a case-by-case basis. *Id*. at 215.

As to the first element, an objectively manifested impairment is one that is "evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. The aggravation of a preexisting condition can constitute a compensable injury under the no-fault act. *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009). Plaintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering. *Id*. quoting *DiFranco v Pickard*, 427 Mich 32, 74; 398 NW2d 896 (1986), superseded by statute as stated in *McCormick*, 487 Mich at 191. If the court finds an objectively manifested impairment, the court must next determine whether the impaired body function is "important." *Id*. at 198. This is a subjective inquiry that asks whether the body function is significant to the injured person. *Id*. at 199. Lastly, the court must determine whether the impairment affects the person's general ability to lead his normal life. *Id*. at 200. This is another subjective inquiry that requires comparing the person's life before and after the injury. *Id*. at 202. The person's general ability to lead her normal life must only be affected, not destroyed. *Id*. "Thus, courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id*.

Here, the trial court did not err in deciding the issue whether plaintiff suffered a serious impairment of an important body function as a question of law. There was no factual dispute as to the nature and extent of plaintiff's injuries. Plaintiff argues that her neck and back pain, as well as her psychological diagnoses, constitute objectively manifested impairments. Defendant does not dispute that plaintiff has neck and back pain and psychological diagnoses, but argues that plaintiff's neck and back pain and psychological diagnoses do not constitute objectively manifested impairments.

Plaintiff has not shown that her diagnoses constitute objectively manifested impairments of important body functions. As to plaintiff's diagnoses of PTSD and major depressive disorder, plaintiff failed to show how these conditions impair a body function. Psychological conditions such as PTSD and depression can constitute serious impairments of a body function. However, plaintiff has not produced any evidence to show how a body function has been affected by her PTSD and depression.

As to plaintiff's neck and back pain, she argues that her diagnosis of cervicalgia and the abnormal vertebrae signal constitute objectively manifested impairments of an important body function. An objectively manifested impairment is one evidenced by actual symptoms or conditions that someone other than the injured person would observe. *McCormick*, 487 Mich at 196. Plaintiffs must introduce evidence establishing that there is a physical basis for their subjective complaints of pain and suffering. *Id*. quoting *DiFranco*, 427 Mich at 74. Plaintiff was examined at the hospital immediately following the accident and no tenderness was discovered. The hospital diagnosed plaintiff with "muscle strain," gave her non-prescription pain medication, and released her the same day. Plaintiff's only diagnoses from Dr. Griesser in the months following the accident were for pain: chronic pain due to trauma, low back pain, pain in thoracic spine, and cervicalgia. Plaintiff asserts that these diagnoses constitute objective findings, however, there is no physical basis noted in all of the medical records provided that account for plaintiff's subjective complaints of pain.

Plaintiff's MRI results were "unremarkable" and did not show any acute injury as a result of the motor vehicle accident. While plaintiff is correct that the abnormal signal at T12 shown in her MRI was an objective finding, the radiologist concluded this was due to "mild degenerative endplate changes or a small hemangioma." "Degenerative" is defined as "of, relating to, involving, or causing degeneration" and "degeneration" in biology is defined as "progressive deterioration of physical characters from a level representing the norm of earlier generations or forms."[3] Thus, this can best be described as "deterioration." During oral argument, the trial court relied on the Mayo Clinic definition of "hemangioma" put forth by defendant. Defense counsel read, "It's a bright red birthmark that shows up at birth or in the first or second week of life…," and added, "So it's basically just a vascular birthmark." The trial court continued, "[a] hemangioma is made up of extra blood vessels that group together into a dense clump." Degenerative changes and a

---

[3] "Degenerative." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/degenerative#dictionary-entry-1 (accessed November 28, 2023); "Degeneration." *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/degeneration (accessed November 28, 2023).

hemangioma are not acute impairments as evidenced by the radiologist's note that "[t]here is no acute fracture or bone bruise/bone marrow edema." Thus, the objective testing failed to identify any abnormality that accounts for plaintiff's subjective complaints of pain.

Further, Dr. Griesser's conclusion that "the injuries sustained by the above named patient were a direct result from the [motor vehicle accident]" is not helpful because he does not identify any injuries other than plaintiff's subjective complaints of pain. Any objective findings noted by Dr. Griesser in his deposition testimony cannot be considered because the deposition was taken in connection with a prior lawsuit against plaintiff's insurer to which defendant MSJ was not a party. The evidence presented in the form of medical records lacks any notation of objective findings, thus, the trial court did not err in finding no factual dispute as to the nature and extent of plaintiff's injuries.

The trial court did not err when it found the evidence insufficient to establish an objectively manifested impairment. Because plaintiff cannot establish an objectively manifested impairment, the trial court did not have to consider whether the impairment affected plaintiff's general ability to lead her normal life. Therefore, the trial court did not err in granting defendant summary disposition.

Affirmed.


/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola